James R. Dickens
MILLER NASH LLP
4400 Two Union Square
601 Union Street
Seattle, WA  98101-2352
Telephone:  (206) 622-8484
Fax:  (206) 622-7485
jim.dickens@millernash.com

Peter Gruenstein
GRUENSTEIN & HICKEY
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK  99501
Telephone:  (907) 258-4338
Fax:  (907) 258-4350
ghlaw3@gci.net

Hon. Timothy M. Burgess

        Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

JAMES BRELAND,

                    Plaintiff,

        v.

FRED MEYER STORES, INC.,

                    Defendant.

Case No. A05-169 CI (TMB)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

**I.  MOTION**

        Defendant Fred Meyer Stores, Inc. ("Fred Meyer") moves for summary judgment

pursuant to Fed. R. Civ. P. 56(b) as to all claims by plaintiff, James Breland ("Breland").

SEADOCS:243079.2

## II. SUMMARY

### A. Claims

Breland's complaint alleges federal statutory claims against Fred Meyer for discrimination in violation of 42 U.S.C. § 1981; hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; and a claim under Alaska state law for wrongful discharge contrary to public policy.

### B. Summary of Facts

Breland was employed at will by Fred Meyer as a part-time Loss Prevention Specialist (LPS) in three of its Anchorage stores – Abbott, Dimond, and Muldoon. Between August 1, 2002 and August 15, 2004, Breland was supervised by Bryan Stewart, Loss Prevention Manager (LPM) at Muldoon. Breland is Asian-African-American; Stewart is Caucasian.

On March 22, 2004, Breland sent an e-mail to the Regional Loss Prevention Manager, Kevin Ruoff, alleging Stewart had made inappropriate racial remarks in his presence, although not directed at Breland. Ruoff addressed the e-mail complaint with the help of human resources and the local store manager.

On August 15, 2004, Stewart was transferred to the Dimond store and no longer supervised Breland. Nevertheless, on October 30, 2004, Breland sent a follow-up e-mail to Ruoff alleging that the March 22, 2004 complaint had not been sufficiently addressed (no other complaints about Stewart had been made by Breland). Further review occurred and on December 2, 2004, a "First, Last, and Final" warning was issued to Stewart, even though the two no longer worked together and no further incidents involving Stewart and Breland had been made raised by Breland.

On February 14, 2005, Breland was involved in a "non-arrest apprehension" at the Muldoon store. A non-arrest apprehension is when a loss prevention employee accuses a customer of theft when no theft has in fact occurred—in other words, it is a big problem. Fred Meyer policy explicitly requires all non-arrest apprehensions to be reported to the regional office within one hour. This policy is critical to addressing customer dissatisfaction, and averting claims against Fred Meyer.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 2 of 23

SEADOCS:243079.2

Failure to comply with this policy results in immediate termination – no exceptions.   On February 14, 2005, Breland participated in a non-arrest apprehension.  The incident was not reported within one hour.  The afternoon of February 15, 2004, the mother of the young female customer involved in the incident called the regional office in Lynnwood, Washington, to complain.  An investigation was conducted, and the Regional Loss Prevention Manager, Kevin Ruoff, concluded that Breland was responsible for failing to report the non-arrest apprehension.  As a result, Breland's employment was terminated.

### C.     Law on Plaintiff's Causes of Action

#### 1.     Hostile Environment (Title VII)

On March 22, 2004, Breland complained about racially inappropriate remarks by Bryan Stewart, the Loss Prevention Manager.   While Breland acknowledged that none of the remarks referred to him personally, he no doubt found the remarks offensive.   Nevertheless, Breland's internal complaint itself makes clear that he maintained a positive professional and personal relationship with Stewart.   Fred Meyer effectively addressed the March 22, 2004, complaint.  During his employment by Fred Meyer, Breland never reported that he was subjected to additional inappropriate remarks by Stewart.

#### 2.     Retaliation (Title VII)

On October 30, 2004, Breland sent a follow-up e-mail to the regional manager alleging his initial complaint of March 22, 2004, had not been sufficiently addressed.  The e-mail also was addressed to the supervisor of the Regional Loss Prevention Manager.  The Regional Loss Prevention Manager conducted his additional investigation and administered additional discipline, even though Breland had not complained about any further racial remarks by Stewart (who was transferred to a different store in August 2004).  Several months later, Ruoff terminated Breland for violation of a clear company policy.  Breland claims that his termination by Ruoff was in retaliation for Breland having copied Ruoff's boss on the e-mail alleging an inadequate response to Breland's

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 3 of 23

SEADOCS:243079.2

initial complaint.  There is insufficient temporal proximity between the October 30, 2004 e-mail and the February 15, 2005, termination decision to infer retaliation.  Additionally, Breland has no evidence to indicate that Fred Meyer's legitimate, non-discriminatory reason for his termination is a pretext.

        3.    <u>Wrongful Termination in Violation of Public Policy</u>

Breland alleges wrongful termination in violation of public policy under Alaska law.  His claim fails for the same reason as his Title VII retaliation claim fails.  Breland has no proof of retaliation or other motivation in violation of public policy.  Given the lack of temporal proximity, the clarity of the non-arrest apprehension policy, and the reasonable investigation by multiple layers of management into the facts underlying the termination decision, Breland cannot overcome summary judgment with mere speculation about retaliatory motivation.

        4.    <u>Disparate Treatment (Section 1981)</u>

Finally, Breland alleges disparate treatment on the basis of his race in violation of 42 U.S.C. § 1981.  Breland cannot make a prima facie case because he cannot demonstrate that the decision-maker treated differently others not in the protected class.  Even if Breland does state a prima facie case, Breland's lack of evidence of pretext entitles Fred Meyer to summary judgment.

### III.  **THE PLAYERS**

<u>Plaintiff James Breland</u>.  Breland was a part-time Loss Prevention Specialist at the Fred Meyer Anchorage stores – Abbott, Dimond, and Muldoon – from January 4, 2002, until he was terminated for failure to follow company policy on February 15, 2005.

<u>Bryan Stewart</u>.  Stewart was the Loss Prevention Manager supervising Breland for two years at the Fred Meyer Muldoon store from August 1, 2002 to August 15, 2004.  Breland complained about racial comments made by Stewart in the workplace.

<u>Kevin Ruoff</u>.  Kevin Ruoff is the Regional Loss Prevention Manager to whom Breland made his complaint about Stewart.  Ruoff was Stewart's supervisor, and he was involved in

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 4 of 23

SEADOCS:243079.2

investigating and resolving Breland's complaint.  Additionally, Ruoff made the final decision to terminate Breland's employment.

      <u>Mike Johnson</u>.  Mike Johnson was the Store Director at Muldoon and, as the senior on-site manager, played a lead role in the investigation and resolution of Breland's complaint about Stewart.  Johnson was also involved in the investigation of the events leading to Breland's termination.

      <u>Ryan Krieger</u>.  Ryan Krieger was promoted to Loss Prevention Manager at the Muldoon store following Stewart's transfer to Dimond on August 15, 2004.  Krieger was involved in the follow up on Breland's complaint against Stewart and in the investigation of the events leading to Breland's termination in February 2005.

      <u>Paul Kodiak</u>.  Paul Kodiak was another Loss Prevention Specialist at the Fred Meyer Muldoon store.  He was working with Breland on February 14, 2005, when the events occurred that resulted in Breland's termination.

## IV.  **EVIDENCE RELIED UPON**

      Plaintiff's complaint; the declaration of James R. Dickens (hereinafter referred to as "Dickens Decl., Ex. ___, p. ___"), the attached deposition testimony of Plaintiff James Breland (hereinafter referred to as "Breland Dep., p. ___"); and the declaration of Kevin Ruoff (hereinafter referred to as "Ruoff Decl., p. ___").

## V.  **UNDISPUTED FACTS AND PLAINTIFF'S TESTIMONY**

### A.  **Background**

      James Breland is Asian and African American.  Breland Dep., p. 11.  He has worked full-time for the State of Alaska as a Child Support Specialist since April 1998.  Breland Dep., p. 8. Breland also has worked second jobs in loss prevention and security, including part-time positions at Fred Meyer.  Breland Dep., p. 7, 14-17.  On January 4, 2002, Breland was hired as a Loss Prevention Specialist at the Fred Meyer Abbott store by Fred Becker.  Breland Dep., p. 20.  On January 27, 2002, Breland transferred to the Fred Meyer store in Dimond, reporting to Ryan Krieger.  Breland

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 5 of 23

SEADOCS:243079.2

Dep., p. 22; Ex. 7. On August 1, 2002, Breland transferred to the Muldoon store, where he reported

to Bryan Stewart, Loss Prevention Manager ("Stewart"). Breland Dep., pp. 24-25; Ex. 13.

Loss Prevention Managers, such as Stewart, have a dual reporting relationship. They

report to the on-site Store Director for day-to-day operational issues and to the Regional Loss

Prevention Manager for loss prevention policy matters. Stewart's Regional Loss Prevention

Manager was Kevin Ruoff, based in Lynnwood, Washington ("Ruoff"). Ruoff Decl., pp. 1-2.

### B.    Applicable Employment Policies

Breland received an employee handbook and other materials setting forth Fred

Meyer's policy prohibiting harassment on the basis of race and its procedure for investigating and

resolving complaints. Breland clearly understood the actions required of him in the event he was

harassed by a supervisor on the basis of his race. Breland Dep., p. 129; Exs. 2, 3, and 4.

### C.    Breland's Initial Complaint About Stewart

On March 22, 2004, Breland sent an e-mail to Ruoff alleging that Stewart had made

racially inappropriate remarks in the workplace. Breland Dep., Ex. 20. Breland acknowledges that

the remarks were never made about him personally. Breland Dep., pp. 27, 175. The remarks

attributed by Breland to Stewart include inappropriate racial epithets. Breland Dep., p. 44.

Breland's e-mail complaint to Ruoff stated, in part:

> During the span of working for and with LPM Stewart I find that he's
> a decent person with some issue's [sic] concerning race. LPM
> Stewart has not directly called or addressed me in a derogatory
> manner concerning race but I personally have heard him make on
> quite a few occasions derogatory/ inappropriate comments
> concerning onces [sic] race with in [sic] the work place. . . . I really
> feel that LPM Stewart tries and he's genuinely a decent person that I
> do get a long [sic] with despite the fact that he's made
> derogatory/inappropriate comments around me.

Breland Dep., Ex. 20. Ruoff responded to Breland immediately, thanking him for his comments and

committing to improve the work environment. Breland Dep., Ex. 21. Ruoff also contacted the Store

Director in Muldoon, Mike Johnson ("Johnson"), and the Regional Human Resources Supervisor,

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 6 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Jennifer Carlson, to discuss an appropriate response.  Breland Dep., Ex. 21.

As the senior on-site manager, Johnson conducted an investigation and reported his findings to Ruoff.  Ruoff Decl., p. 4.  Stewart called Breland and personally apologized for making any offensive remarks.  Breland Dep., p. 44.  Breland's recommendation to Ruoff in the initial complaint was for Stewart to receive education on dealing with minorities in the workplace.  Breland Dep., pp. 187-188, 217; Exs. 20 and 21.  Johnson advised Stewart of Breland's March 22, 2004, complaint and directed Stewart to attend diversity training before his next performance evaluation.  Ruoff Decl., p. 4; Ex. 4.  As a result of the dual reporting structure, Johnson and Ruoff had a mix-up as to which one of them would document the matter in Stewart's personnel file.  Ruoff Decl., p. 4.

When a Loss Prevention Manager position opened at the Dimond store in August 2004, Stewart was transferred and no longer supervised Breland.  Ruoff Decl., p. 4. Following Breland's March 22, 2004, complaint, Ruoff heard of no further incidents involving Stewart from Breland or any other employee, and the matter was considered resolved.  Ruoff Decl., p. 5.  Breland maintained a close working relationship with Stewart and continued to excel in his job performance.  Breland Dep., pp. 97, 110.

**D.**    **Breland's Follow-Up Complaint About Stewart**

On October 30, 2004, Breland sent another e-mail to Ruoff indicating dissatisfaction with the resolution of his initial complaint seven months earlier.  Breland Dep., Ex. 25.  The e-mail was also copied to Ruoff's supervisor, Scott Bringhurst.  Breland Dep., Ex. 25.  Ruoff had no problem with Bringhurst's inclusion on the e-mail, as Ruoff regularly apprised Bringhurst of significant issues in the workplace.  Bringhurst and Ruoff discussed Breland's complaint, but Ruoff suffered no adverse consequences resulting from Breland including Bringhurst on the e-mail.  Ruoff Decl., p. 5.

Ruoff immediately arranged a follow-up investigation.  Ruoff Decl., p. 5.  Johnson and Stewart's replacement at the Muldoon store, Ryan Krieger, met with Breland on November 13, 2004.  Breland Dep., Exs. 26, 27, and 28.  Breland expressed his opinion that Stewart should have

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 7 of 23

SEADOCS:243079.2

received a suspension in response to Breland's initial complaint.  Breland Dep., p. 210.  Breland was informed at the conclusion of the investigation of his March 22, 2004, complaint that the matter had been addressed with Stewart.  Breland Dep., Exs. 27 and 28.  Apparently, Breland heard hearsay rumors of inappropriate comments by Stewart at the Dimond store and formed the impression that that matter had not been fully addressed.  Breland Dep., p. 206; Ex. 28.  Johnson and Krieger reported their findings to Ruoff.  Breland Dep., Exs. 27 and 28.

       In November 2004, Ruoff flew to Alaska and met with Breland.  Breland Dep., pp. 204-205.  Ruoff also spoke to other loss prevention employees about Stewart, but none of them told Ruoff that Stewart had made any racial remarks since Breland's prior complaint.  Ruoff Decl., p. 5.  In an effort to ensure the matter was finally resolved, Ruoff worked with Jennifer Carlson in Human Resources and prepared a formal written warning letter to Stewart.  Ruoff Decl., p. 5.  The letter was presented to Stewart on December 2, 2004 by Mike Blewett, the Store Manager of the Fred Meyer Dimond location.  Ruoff Decl., p. 5; Ex. 7.

     **E.**      **Non-Arrest Apprehension Policy**

       Loss prevention inherently involves accusing store customers of theft.  Ruoff Decl., p. 2.  Given the sensitive nature of such a role, Fred Meyer has developed very specific procedures that its loss prevention personnel must follow when confronting customers.  The Loss Prevention Policy Manual explains as follows:

> Fred Meyer views direct and indirect allegations or implications of theft by any personnel as a most serious and potentially damaging act. There is a very specific procedure to be followed by Loss Prevention personnel when effecting apprehension of suspects.  That procedure is to be followed.
>
> Appreciating that we live in an imperfect world, on occasion, a customer will be approached who will not have the merchandise where the Loss Prevention Person believes it is located or the customer has paid for the merchandise.  In either instance, we courteously apologize to the customer for the inconvenience, patience and any embarrassment, and permit them to continue on their way. This non-arrest apprehension or approach is immediately reported

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 8 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

both verbally to your Supervisor and in written statement form as per instruction on Incident Reports.

Ruoff Decl., Ex. 2. One of the most critical procedures is a requirement that all non-arrest apprehensions be reported to the regional office *within one hour*. Ruoff Decl., p. 3; Ex. 2. A non-arrest apprehension occurs when a customer is confronted by Loss Prevention, but the customer does not have the product, and thus Fred Meyer cannot prove that a theft has occurred. Ruoff Decl., pp. 2-3; Ex. 2. Failure to properly and timely report a non-arrest apprehension is a terminable offense because such a failure hinders the company's ability to make proper amends with a dissatisfied customer and to avert claims against Fred Meyer. Ruoff Decl., p. 3.

Breland had read and was familiar with the requirements of the Loss Prevention Policy Manual, Section 400, on one hour to report a non-arrest apprehension. Breland Dep., pp. 163-64; Ex. 19.

**F.    Breland's Termination for Violation of Company Policy**

On February 15, 2005, Ruoff received a telephone call from Julie Emms, who claimed that her daughter, Jennifer, improperly had been stopped and arrested the night before by two security officers at the Muldoon store. Ruoff Decl., p. 6. During the call, Ruoff also spoke to Jennifer Emms and took notes as she told him that two men bumped into her and wanted to talk about the lip gloss in her purse. She said she put it down. The black male, she said, did the talking. Ruoff Decl., p. 6; Ex. 8. Before he talked with the Emms, Ruoff had not received a notice or call regarding a non-arrest apprehension the prior evening. Ruoff Decl., p. 6. Ruoff contacted the Store Director, Mike Johnson, and the LPM, Krieger, and asked them to investigate. Ruoff Decl., p. 6.

Johnson and Krieger called Ruoff later on February 15, 2005, with the following information:

(a)    First, they had interviewed the two loss prevention officers involved in the non-arrest apprehension the evening before on February 14, 2005, and they were James Breland and Paul Kodiak. Paul Kodiak is Caucasian.

(b)    Kodiak said that he and Breland had been observing these two women, one black and one white, and Breland thought they had been stealing

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 9 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

merchandise. Kodiak and Breland were communicating by cell phone, and Kodiak's statement was that Breland told Kodiak he had all five required elements and to stop the women once they exited the store.

(c)     Kodiak stated that the women were stopped just outside the Muldoon store entrance by him, and that within seconds Breland appeared and took over as the senior officer and asked the women to follow him to the Loss Prevention office in the back of the store. Breland denied being in charge of the incident, and also claimed that he did not ask the women to follow him into the Loss Prevention office, but they were harassing him and followed him on their own.

(d)     A videotape review of the non-arrest apprehension outside the store, and the subsequent retreat of the two women and Kodiak and Breland to the Loss Prevention office supported Kodiak's view that Breland was in charge and the women were following him at his direction.

(e)     In the Loss Prevention office, the videotape showed a woman giving her purse to Breland to examine, which he did and handed it back to her.

(f)     Kodiak said he asked Breland who was going to file the report, and as Kodiak had just returned from a military tour in Iraq, Breland said he would take care of it.

(g)     The *only* incident report filed by Breland the evening of February 14, 2005, was alleged harassment by two female customers. There was no report filed regarding non-arrest apprehension.

Ruoff Decl., pp. 6-7; Exs. 9 and 10.

After hearing the information relayed by Johnson and Krieger, and confirming that Krieger also had not been called the evening before by Breland about the non-arrest apprehension, Ruoff concluded that there was a clear violation of the loss prevention policy, to wit, the failure to report a non-arrest apprehension within one hour of its occurrence results in immediate termination of employment. Ruoff Decl., p. 7. Given that the videotape and Jennifer Emms clearly supported Kodiak's version of events, and that Breland had engaged in the initial observation of the customers and filed the inadequate report, Ruoff concluded that Breland was responsible for the non-arrest stop and for the failure to timely report it. Ruoff Decl., p. 7-8.

Breland was discharged on February 15, 2005, for failure to report a non-arrest apprehension within one hour in accordance with company policy. Breland Dep., p. 237; Ex. 31.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 10 of 23

SEADOCS:243079.2

Had Breland timely reported the non-arrest apprehension, he would have had two non-arrest apprehensions within a 24-month period, which would have been an independent basis for his termination. Breland Dep., p. 240; Ex. 19.

The Fred Meyer policy of immediate termination for failing to report a non-arrest apprehension within one hour of its occurrence **has been consistently applied by Ruoff to all loss prevention officers**. Ruoff Decl., p. 8. Ruoff has been involved in terminating other loss prevention employees for failing to timely report non-arrest apprehensions, including:

Bonnie Young (Caucasian) on December 2, 2003

Harold Rosales (Hispanic) on February 24, 2004

Mike McCartney (Caucasian) on May 24, 2005

Ruoff Decl., p. 8. **Ruoff has never had a situation where a loss prevention employee failed to timely report a non-arrest apprehension and not been terminated.** Ruoff Decl., p. 8.

Breland claims that Ruoff made the termination decision in retaliation for Breland copying Ruoff's boss, Scott Bringhurst, on Breland's October 20, 2004, e-mail alleging an inadequate response to his initial complaint regarding Stewart. Breland Dep., pp. 93, 122, and 224. Ruoff declares that neither Breland's race, nor any retaliatory motive, played any role in the decision to terminate Breland's employment. Ruoff Decl., p. 8-9.

## VI. LEGAL

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials. Zweig v. Hertz Corp., 521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975). The moving party is entitled to summary judgment when, viewing the evidence and the inferences in favor of the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56.

> [Only] disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 11 of 23

SEADOCS:243079.2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The nonmoving party must rely exclusively on admissible evidence in opposing the defendant's motion.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  In addition, the nonmoving party must present genuine issues of fact.  "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1060 (9th Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A party opposing a motion for summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party's claim must be analyzed in light of the factual context of the case:

> [I]f the factual context makes a nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.

California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original) (citing Matsushita, supra), cert. denied, 44 U.S. 1006 (1988).

**B.    Hostile Work Environment**

Fred Meyer is entitled to summary judgment on Breland's hostile environment claim because the steps Fred Meyer took to correct and prevent harassment entitle Fred Meyer to an affirmative defense.  Breland's "hostile environment" claim is based upon offensive racial epithets made in his presence, but never referring directly to Breland.  While the alleged comments, if made, were highly inappropriate, Fred Meyer promptly investigated in accordance with its complaint procedure and implemented an effective remedy.

Breland's March 22, 2004, complaint letter is too lengthy to quote in its entirety, but the following statements from the Breland's letter illustrate that there had not been an irreparable breakdown in the working relationship between Breland and Stewart:

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE: (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 12 of 23

SEADOCS:243079.2

> LPM Stewart has not directly called or address [sic] me in a derogatory manner concerning race. . . I really feel that LPM Stewart tries and he's a genuinely decent person that I do get a long [sic] with despite the fact that he's made derogatory/ inappropriate comments around me.

Breland Dep., Ex. 20.  After this letter was written, Breland never again complained to Fred Meyer about additional inappropriate comments made in his presence by Stewart.  Breland does not allege that any tangible job action was taken against him by Stewart.

For purposes of this motion only, Fred Meyer does not dispute whether Stewart's comments may have constituted a hostile environment.  Nevertheless, Fred Meyer satisfied the affirmative defense established in Faragher v. City of Boca Raton, 524 U.S. at 807, and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  See Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 877, (9th Cir. 2001).  When no tangible employment action was taken by the alleged harasser, an employer may prove (a) that it "exercised reasonable care to prevent and correct promptly any . . . harassing behavior" and (b) "that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Ellerth, 524 U.S. at 765.  Once an employer has established that it has an anti-harassment policy and has disseminated the policy, it is entitled to the protections of the affirmative defense upon showing that the plaintiff failed to use it.  Id.  Accord, Faragher, 524 U.S. at 807.

It is undisputed that Fred Meyer has an anti-harassment policy and a complaint procedure.  Breland received written materials setting forth Fred Meyer's policy prohibiting harassment on the basis of race and its procedure for investigating and resolving complaints.  Breland clearly understood the actions required of him in the event he was harassed by his supervisor on the basis of his race.  Under the law, therefore, even if Breland had been subjected to a racially hostile environment prior to March 22, 2004, because he failed to utilize the internal complaint procedure, Fred Meyer cannot be held liable for conduct of which it was unaware.  See Montero v. AGCO Corp., 192 F.3d 856, 862-63 (9th Cir. 1999) (employer promptly took steps to

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 13 of 23

SEADOCS:243079.2

correct harassment and the employee failed to complain for nearly two years; based on affirmative defense, summary judgment for employer was appropriate).

Furthermore, as soon as Breland complained to Ruoff about the comments made by Stewart, an investigation was conducted and remedial steps were undertaken. Breland never again complained to Fred Meyer about additional inappropriate comments in his presence by Stewart. In addition, when an opportunity became available, Stewart was removed from supervisory authority over Breland and transferred to a different store. When Breland made a second complaint seven months later about discipline for the very same incidents he reported in March, Fred Meyer again investigated and gave Stewart a "final" written warning. It is undisputed that Fred Meyer took these steps to prevent and correct any actual or perceived harassment.

Summary judgment in favor of Fred Meyer on Breland's claim of hostile environment under Title VII should be granted because Fred Meyer acted reasonably, diligently and effectively upon Breland's complaints.

## C.     Retaliation (Title VII)

Breland was terminated for violation of company policy. Breland was given clear written notice of the policy requiring the reporting of non-arrest apprehensions within one hour, including the fact that failure to report would result in immediate termination. Breland was involved in a non-arrest apprehension on February 14, 2005. Two shoppers were detained regarding alleged theft of cosmetics, but no merchandise was discovered. The non-arrest apprehension was not reported as required. Instead, the Regional Loss Prevention Manager learned of the event the following day from a call by a parent of one of the shoppers complaining about the incident, just exactly the opposite situation he desired. Ruoff arranged for an investigation of the event, including interviews of the loss prevention personnel involved and review of videotape. Ruoff concluded that Breland was responsible for the non-arrest apprehension and for making the required report. As a result, Ruoff terminated Breland for failure to comply with the applicable company policy, as set forth therein.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 14 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Breland alleges that Ruoff terminated his employment in retaliation for Breland's protected activity of complaining about racial comments by Stewart. Breland's sole evidentiary basis for his claim is that Breland copied Ruoff's supervisor on the October 30, 2004, e-mail wherein Breland claimed that the response to his March 22, 2004, complaint had been insufficient.

This claim falls into the familiar burden shifting analysis set out in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). First, the burden is on Breland to establish a prima facie case of discrimination. Then, if a prima facie case is established, the burden shifts to Fred Meyer to articulate a legitimate, nondiscriminatory reason for his termination. If a legitimate, nondiscriminatory reason is presented, the burden shifts back to Breland to show that the reason offered by Fred Meyer was pretextual. <u>McDonnell Douglas</u>, 411 U.S. at 802.

    1.    <u>Plaintiff cannot establish a prima facie case.</u>

In order to establish a prima facie case of retaliation under Title VII, Breland must show: (a) that he was engaged in a protected activity; (b) that an adverse employment decision was made; and (c) that there was a causal connection between the two. <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464 (9th Cir. 1994); <u>Miller v. Fairchild Industries, Inc.</u>, 797 F.2d 727 (9th Cir. 1986). For purposes of this motion only, Fred Meyer does not contest that plaintiff has met the first two requirements of a prima facie case. Fred Meyer does contest, however, plaintiff's assertion that there was a causal connection between his protected activity (complaining about racial comments by Stewart) and his termination. "Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge. *** Alternatively, the plaintiff can prove causation by providing direct evidence of retaliatory motivation." <u>Miller</u>, 797 F.2d at 731 (internal citations omitted).

The record shows plain and compelling reasons for Breland's termination. Breland has produced no direct evidence of retaliatory motivation. Absent such evidence being produced, Breland must argue that causation should be inferred from the proximity in time between the filing of his complaints, and his termination. <u>Id.</u> This argument fails. Breland was not discharged until

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 15 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

almost 11 months after filing his first complaint about Stewart's comments, and nearly four months after filing his follow-up complaint regarding the disciplinary action against Stewart for his comments reported 11 months earlier.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001), citing O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001), and Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992 (four-month period insufficient).

By contrast, see Kinzel v. Discovery Drilling, 93 P.3d 427 (employee discharged less than a month after filing worker's compensation claim showed sufficient proximity); Veco, Inc. v. Rosebrock, 970 P.2d 906 (employee discharged within days of reporting sexual assault showed sufficient proximity); Miller, 797 F.2d at 730 (employees laid off within two months of settlement in which they relinquished their rights to sue for discrimination showed sufficient proximity); and Love v. Re/Max of America, Inc., 738 F.2d 383, 386 (10th Cir. 1984) (employee discharged within two hours of requesting pay raise pursuant to the Equal Pay Act showed sufficient proximity). Here, Breland was terminated 11 months after filing his initial complaint to Ruoff, and nearly four months after his follow-up to the initial complaint. Causation under the applicable legal standard cannot reasonably be inferred from the proximity of events in this case.

With no direct evidence of retaliatory motivation, and no basis to infer causation from the proximity of his discharge to his protected activity, plaintiff cannot establish a prima facie case of retaliation. Thus, plaintiff's retaliation claim must be dismissed.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 16 of 23

SEADOCS:243079.2

2.    Even if Breland could present a prima facie case of retaliation, he cannot establish pretext.

Under the burden shifting approach described above, even if Breland could establish a prima facie case, Fred Meyer may present a legitimate non-discriminatory reason for his termination. Fred Meyer has met this burden. Breland was terminated for violation of an important company policy. Thus, the burden shifts back to Breland to show that this reason asserted by Fred Meyer is a pretext for discriminatory retaliation. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). To this end, Breland must provide direct evidence to show that his protected activity actually motivated Fred Meyer to terminate him. Woodson v. Scott Paper Co., 109 F.3d 913, 932 (3d Cir. 1997). Breland must offer evidence creating a genuine issue of fact as to whether an impermissible factor played a role in Fred Meyer's decision-making process and that it had a determinative effect on the outcome of that process. Miller v. CIGNA Corp., 47 F.3d 586, 588 (3d Cir. 1995). Breland has produced no evidence, let alone direct evidence, that a retaliatory motive had a determinative effect on the decision to discharge him. Thus, Breland cannot show pretext and his retaliation claim must be dismissed.

D.    **Wrongful Discharge in Violation of Public Policy**

Alaska law recognizes only a limited cause of action for breach of the covenant of good faith and fair dealing in an at-will employment situation. Alaska cases "distinguish between at-will and for-cause employment." Era Aviation, Inc. v. Seekins, 973 P.2d 1137, 1139 (Alaska 1999). "Employees hired on an at-will basis can be fired for any reason that does not violate the implied covenant of good faith and fair dealing." Id. quoting Luedtke v. Nabors Alaska Drilling, Inc., 768 P.2d 1123, 1130 (Luedtke I) (Alaska 1989). This implied covenant prevents employers from firing an at-will employee (a) in order "to unfairly deprive an employee of a benefit contemplated by the employment contract," such as receiving a promised share of the business profits (subjective bad faith) or (b) "in violation of a specific public policy," for grounds found to be unconstitutional, or for disparate treatment (objective bad faith). Seekins, 973 P.2d at 1139-40. Thus, "[t]he subjective

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 17 of 23

SEADOCS:243079.2

aspect prohibits an employer from terminating an employee for the purpose of depriving the employee of a contract benefit, and the objective aspect requires an employer to act in a manner that a reasonable person would regard as fair." <u>Chijide v. Maniilaq Assoc. of Kotzebue</u>, 972 P.2d 167, 172 (Alaska 1999).

Breland brings his claim for wrongful termination in violation of public policy presumably under the Alaska covenant of good faith and fair dealing in at-will employment contracts. <u>Eldridge v. Felec Services, Inc.</u>, 920 F.2d 1434 (9th Cir. 1990); <u>Norcon, Inc. v. Kotowski</u>, 971 P.2d 158, 166-67 (Alaska 1999). The issue under this cause of action is not whether the employer made a reasonable or "correct" decision, but whether the employer was motivated by improper reasons:

> Under Alaska law, a breach of the implied covenant of good faith occurs if the employer discharged the employee in retaliation for conduct protected by public policy. . . . *the motive of the employer is the primary consideration. . . .*
>
> . . . To defend the claim against it, [defendant] need only show that it was motivated to discharge [plaintiff] for reason other than to retaliate for the assertion of rights under the Alaska Workers' Compensation Act*. It is irrelevant whether the company's reliance on the labor agreement was reasonable or whether its interpretation of the agreement was correct. The sole issue is the motivation for the discharge.*

<u>Eldridge</u>, 920 F.2d at 1439 (internal citations omitted; emphasis added); <u>Norcon</u>, 971 P.2d at 167 (favorably quoting <u>Eldridge</u>).

In <u>Eldridge</u>, the employee had applied for worker's compensation benefits, including leave during the recovery period of the injury. The employee's leave benefit under the collective bargaining agreement expired before he was ready to return to work, and the company terminated his employment in accordance with the collective bargaining agreement. The court held that plaintiff's claims were not preempted by the Labor Management Relations Act because no interpretation of the collective bargaining agreement was necessary – it did not matter whether the employer was correct

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 18 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

in its interpretation of the agreement, just whether the employer's reliance on its interpretation of the agreement was the motivation for the decision to terminate the plaintiff. If so, the plaintiff had no claim.

Similarly, Breland has no claim for wrongful termination in violation of public policy. As discussed above with regard to the failure of Breland's retaliation claim, Breland offers no proof of a retaliatory motive by Ruoff. Breland simply states that Ruoff's supervisor, Scott Bringhurst, was copied on Breland's October 30, 2004, e-mail to Ruoff complaining that the response to Breland's March 22, 2004, complaint about Stewart had been insufficient. Breland then speculates about the possible effect the inclusion of Ruoff's supervisor on the e-mail may have made on Ruoff's termination decision in response to the non-arrest apprehension nearly four months later.

Breland offers no proof that Ruoff's supervisor even read the e-mail, let alone spoke to Ruoff about it or admonished him about his performance. In addition, Breland offers no evidence that Ruoff was upset in the slightest by Breland's sending a copy of the October 30, 2004, e-mail to Scott Bringhurst. Breland offers no evidence – no statements or conduct by anyone – to support his claim of a retaliatory motive, other than the fact that the e-mail was copied to Ruoff's boss and that Ruoff terminated Breland nearly four months later. Given the passage of time, the clarity and importance of the non-arrest apprehension policy, and the reasonable investigation by multiple layers of management into the facts underlying the termination decision, Breland cannot overcome summary judgment with mere speculation about retaliatory motivation.

**E.** **Disparate Treatment (42 U.S.C. § 1981)**

Disparate treatment claims are subject to the same burdens of proof and production under both Title VII and 42 U.S.C. § 1981. Cross v. Roadway Exp., 861 F. Supp. 698 (N.D. Ill. 1994), aff'd, 51 F.3d 375 (7th Cir. 1995). Thus, Breland's claim falls into the familiar burden shifting analysis set out in McDonnell Douglas. First, the burden is on Breland to establish a prima facie case of discrimination. Then, if a prima facie case is established, the burden shifts to Fred Meyer to articulate a legitimate, nondiscriminatory reason for his termination. If a legitimate,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 19 of 23

SEADOCS:243079.2

nondiscriminatory reason is presented, the burden shifts back to Breland to show that the reason offered by Fred Meyer was pretextual. <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 802.

For purposes of this motion only, Fred Meyer assumes Breland states a *prima facie* case. Thus, Fred Meyer bears the burden of producing a legitimate, nondiscriminatory reason for Breland's termination. <u>Leung v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003) citing <u>McDonnell Douglas</u>, 411 U.S. at 802. The employer's burden is not one of persuasion, but rather one of production. <u>McDonnell Douglas</u>, 411 U.S. at 802. Fred Meyer has produced a legitimate, nondiscriminatory reason for Breland's discharge – violation of a clear and important company policy that failure to report any non-arrest apprehension is grounds for immediate termination. Once a defendant has articulated a legitimate, nondiscriminatory reason for termination, the plaintiff must show that the articulated reason is phony, false, or unworthy of belief, and instead is a pretext for discrimination. <u>Pottenger v. Potlach Co.</u>, 329 F.3d 740, 746 (9th Cir. 2003). "The burden of *persuasion* remains at all times upon the plaintiff." <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

To avoid summary judgment, a plaintiff must produce "sufficient evidence to find that the employer's asserted justification is false." <u>Reeves v. Sanderson Plumbing Prods, Inc.</u>, 530 U.S. 133, 148 (2000). "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." <u>Id.</u>

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (relying on <u>Reeves</u>).

> To withstand an employer's motion for summary judgment in a discrimination suit, the employee must do more than establish a

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 20 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

> *prima facie* case and deny the credibility of the employer's witnesses. [citations omitted]    The plaintiff must also offer specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination.

Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986); Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (to defeat summary judgment, plaintiff must produce "specific, substantial evidence of pretext.").

Breland's evidence of pretext is simply that while he and Paul Kodiak each played a role in the February 2004 non-arrest stop, Breland was terminated and Kodiak was not. However, Breland ignores the several reasonable bases for the decision-maker to distinguish between Breland and Kodiak in the matter:

Breland was the senior officer of the pair;

Breland was the one of the two who observed the elements of shoplifting;

Breland was the one who took the lead in talking to the suspects;

Breland was the one of the two who escorted the women to the office;

Breland searched a suspect's purse;

Breland was the one of the two who filed a report incorrectly describing the events; and

The videotape corroborated Kodiak's statements and contradicted several of Breland's statements.

Kodiak merely effected the initial stop **based upon elements observed by Breland**.  Kodiak claimed that the stop was made upon Breland's specific instructions, and Breland denies this. Breland contends that the initial physical stop made Kodiak entirely responsible for the non-arrest apprehension and for reporting it within an hour.  For the reasons set forth above, Fred Meyer disagreed with Breland.  The plaintiff "has to do more than show that by his own standards he should have been treated better."  Kuhn v. Ball State University, 78 F.3d 330, 332 (7th Cir. 1996).

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 21 of 23

SEADOCS:243079.2

Even if the employer is mistaken in its evaluation of the circumstances, a mistaken business decision is not a pretext as a matter of law. <u>Rignato v. American Trans Air, Inc.</u>, 14 F.3d 342, 349 (7th Cir.), <u>cert. denied</u>, 512 U.S. 1205 (1994); <u>Mister v. Illinois Cent. Gulf R.R. Co.</u>, 832 F.2d 1427, 1435 (7th Cir. 1987). Breland's contention that Kodiak was primarily responsible for the non-arrest apprehension does not defeat summary judgment. Fred Meyer's investigation involved discussion with an aggrieved customer, videotape review, interviews of Breland and Kodiak, and input from multiple management functions and levels. Breland's mere disagreement with the decision-maker's conclusion cannot overcome his burden to show Fred Meyer's reason for terminating Breland was <u>untrue</u>. There is abundant and uncontroverted evidence that no discrimination occurred.

To paraphrase the U.S. Supreme Court in <u>Reeves</u>, Fred Meyer is entitled to judgment as a matter of law because the record in this case conclusively supports the nondiscriminatory reason the decision-maker terminated Breland's employment: An unreported non-arrest apprehension occurred, and Ruoff concluded after a thorough investigation that it was Breland's report to make. Breland has no evidence that the Ruoff's legitimate, nondiscriminatory reason for his termination is pretext for discrimination. Breland and his peers were given prior written notice of the exact disciplinary consequence of failure to report a non-arrest stop. All evidence leads to the conclusion that Ruoff honestly believed that Breland was responsible for the violation of policy. Additionally, the decision-maker in this case has acted consistently with regard to every other employee who engaged in the same conduct as Breland.

Breland simply cannot demonstrate that the legitimate, non-discriminatory reason offered by Fred Meyer's decision-makers is untrue, unworthy of belief, or a mere pretext for race or age discrimination. Summary judgment is appropriate.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:243079.2

## VII.  CONCLUSION

Based on the foregoing, the defendant respectfully asks that its motion be granted and all plaintiff's claims dismissed with prejudice.

DATED this 25th day of August, 2006.

MILLER NASH LLP

s/ James R. Dickens
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
Phone:  (206) 622-8484
Fax:  (206) 622-7485
E-mail:  jim.dickens@millernash.com
Admitted *pro hac vice*

GRUENSTEIN & HICKEY

s/ Peter Gruenstein
Gruenstein & Hickey
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK 99501
Phone:  (907) 258-4338
Fax:  (907) 258-4350
E-mail:  ghlaw@gci.net
ABA No. 7910079

Attorneys for Defendant

Certificate of Service

I hereby certify that on August 25, 2006,
a copy of the foregoing was served
electronically on:

Lee Holen

s/ James R. Dickens

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 23 of 23

SEADOCS:243079.2

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484