# DECLARATION OF JAMES R. DICKENS
# EXHIBIT A – PAGES 31-64

Page 224

1    your complaint against Bryan Stewart?

2        A.    I believe Mr. Ruoff was biased against me

3    because I e-mailed his superior basically informing

4    him that I felt the issue concerning racist remarks in

5    the workplace wasn't taken care of.

6        Q.    Well, "biased," you mean he simply might

7    have been a little bit upset that you had jumped the

8    chain of command?

9        A.    I didn't jump the chain of command.

10        Q.    Isn't Mr. Bringhurst above Mr. Ruoff in the

11    chain of command?

12        A.    That's Mr. Ruoff's supervisor.

13        Q.    Isn't that jumping the chain of command?

14        A.    No.

15        Q.    Why not?

16        A.    Because I already went through Mr. Ruoff

17    already in March.

18        Q.    But you hadn't had follow-up with him.  You

19    never followed up with him and say:  Mr. Ruoff, what

20    are you doing?  What have you done?

21        A.    It's not my -- it's not my opinion that

22    I should have followed up with Mr. Ruoff.  I filed

23    a complaint.  And Mr. Ruoff had seen me several

24    times and never said anything concerning the

25    issues.

BRELAND v FRED MEYERS STORE

Page 237

1    Krieger's call to Kevin Ruoff?

2        A.    I asked Ryan:   Why am I being terminated?

3        Q.    And he said what?

4        A.    For a non-reporting of a non-arrest

5    apprehension.

6        Q.    And that's consistently been the company's

7    position, has it not?

8        A.    Looks that way.

9        Q.    All right.   From what you're telling me, it

10    sounds as if simply you and Paul Kodiak had different

11    versions of who directed whom to do what and the

12    company believed Paul Kodiak instead of you.   Isn't

13    that what you see?

14        A.    What I see is that the loss prevention

15    manager and regional loss prevention officer did not

16    tell me or Paul Kodiak that he was in training.   So

17    Paul Kodiak enacted a stop, thinking that he was fully

18    able to make stops, which he did.   And I am being

19    blamed for Paul Kodiak's mistake.

20        Q.    Were you advised by anyway on February 15,

21    2004 that Paul's version of what took place was

22    different than what you were telling them?

23        A.    I was not advised of that.

24              MR. DICKENS:   Okay.   Would you mark this,

25    please?

BRELAND v FRED MEYERS STORE

Page 240

```
 1    apprehension or failure to write up a non-arrest, that

 2    would be two violations within 24 months, wouldn't it?

 3         A.    The February the 15th non-arrest

 4    apprehension facts were incorrect.

 5         Q.    That's not my question.  Did you understand

 6    my question?

 7         A.    You're saying that the two non-arrests would

 8    equate to a termination within the 24-month period.

 9         Q.    I'm saying that if Fred Meyer reasonably

10    concluded the February 14, 2005 situation was a

11    non-arrest apprehension, isn't it true that that would

12    be the second non-arrest apprehension within 24

13    months?

14         A.    It would be if it was reasonably concluded,

15    yes.

16         Q.    All right.  And that, under the loss

17    prevention policy, would be grounds for termination,

18    correct?

19         A.    Correct.

20         Q.    All right.  Mr. Breland, I've got some

21    documents here that look like they were prepared, To

22    Whom They May Concern, typed by you.  There's some

23    other documents that look like a timeline of

24    complaint.  Those all appear to have been prepared

25    after you left the employ of Fred Meyer.  Were they
```





# Inside Your Handbook

Welcome to Fred Meyer ......................................................1
    A Message From Darrell Webb, President ...........................1

Company History ..............................................................2
Company Philosophy ........................................................4
Company Values ...............................................................5
    Customer Service .........................................................5
    Treating People Right ..................................................6
    Continuous Improvement ............................................6
    Loyalty .........................................................................6
    Equal Employment Opportunities ...............................6
    Development ................................................................7
    Diversity .......................................................................7
    Inclusion ......................................................................7

Your Career at Fred Meyer ...............................................8
    Getting Started .............................................................8
    Taking the Next Step ..................................................10

Benefits ...........................................................................11
    Time Off ......................................................................11
    Company Sponsored Plans .........................................14
    Discounts and Services ..............................................16
    Rewards Program ........................................................17

Conduct ...........................................................................19
    Business Ethics ...........................................................19
    Sexual Harassment .....................................................21
    Complaint Resolution .................................................23
    Alcohol and Drug Use ................................................24

Dress and Appearance ......................................................26
Solicitations .....................................................................26
Press Interviews ...............................................................26
Personal Telephone Calls .................................................27
Telephone Etiquette .........................................................27
Electronic Mail .................................................................27
Internet Acceptable Use ...................................................27
Time and Attendance .......................................................28
Loss Prevention ...............................................................29
Personal Weapons ............................................................30
Violence in the Workplace ...............................................30

Health and Safety .............................................................31
    Workplace Safety ........................................................31

Fred Meyer in the Community .........................................35
    The Fred Meyer Foundation .......................................35
    Fred Meyer Volunteers ...............................................36
    Gold Star Club ............................................................36
    Fred Bear ....................................................................37
    Environmental Responsibility ....................................37

Resources and Information ...............................................38
    Corporate Policy Handbook .......................................38
    Web Resources ...........................................................38
    Fred Meyer Television ................................................39
    Credit Union ...............................................................39
    Direct Deposit .............................................................40
    Direct Deposit Authorization Acknowledgement .......41
    Associate Handbook Receipt Acknowledgement .........41

200109

# Values

## Treating People Right

We believe that to do our jobs well, we have to treat each other right. No matter what your job, you deserve to be treated right by your co-workers and your supervisor. Likewise, you're expected to treat everyone you work with how you want to be treated. We're committed to creating a work environment based on mutual respect and dignity.

## Continuous Improvement

Fred Meyer built this company by always looking for ways to make stores better. Now that spirit of continuous improvement belongs to all of us. We believe that our associates are our greatest asset. That's why we have the I-Power program. It's a way you can share your ideas on how to improve Customer service, operations, and quality of work life.

Got a great idea? Just complete an I-Power form online. Your idea will be considered by company executives and may be put into practice. Whatever the decision, you'll get feedback on your idea.

## Loyalty

When you do your shopping, it makes sense to "spend it where you earn it." Shopping at Fred Meyer increases business, and that means greater job security and opportunities for you and your co-workers. As an added benefit, all associates get a 10% discount on most non-food merchandise (see page 16).

## Equal Employment Opportunities

Fred Meyer is an equal opportunity employer. We hire and promote our associates without regard to race, religion, color, sex, sexual orientation, disability, age, or national origin. In addition, Fred Meyer complies with applicable federal, state, and local non-discrimination laws.

It's our goal to be the employer of choice in every community where we do business. That's why we're committed to cultivating a diverse work environment where individual differences are respected. This policy applies to all terms and conditions of employment, including, but not limited to, hiring, placement, promotion, termination, layoff, recall, transfer, leave of absence, compensation, benefits, training, and development.



*Fred Meyer built this company by always looking for ways to make stores better. Now that spirit of continuous improvement belongs to all of us.*

6

# Conduct

In business and personal conversations, associates should limit comments about the company to information that has been publicly released by the company. Non-public information about the company should be treated as confidential. No information about sales, earnings, competitive activities, systems, technology, proposed company developments or activities, or products should be disclosed; associates must adhere to practices designed to safeguard that information.

For more information, refer to corporate policy 4.1, Business Ethics.

## Violations

If Fred Meyer management has a reasonable basis to believe an associate has violated this policy, such violations will be met with disciplinary action, up to and including termination.

## Questions

Associates finding themselves in situations where they are uncertain of the intent of this policy, or how it applies to a specific situation, should ask their supervisor, the Vice President of Employee Relations, the Group Vice President of Human Resources or the President for clarification.

## Sexual Harassment and Other Forms of Harassment

Fred Meyer is committed to a workplace free from unlawful discrimination, which includes sexual harassment and other forms of harassment because of one's race, color, religion, gender, national origin, age, disability, or sexual orientation.

Any form of harassment undermines the company's insistence upon associate integrity, and is considered serious misconduct. No associate, either male or female, should be subjected to offensive conduct or innuendo, either verbal or physical, from co-workers, supervisors, Customers, or vendors.

All associates have a responsibility to maintain the workplace free of harassment and to report such misconduct when it occurs, just as any form of unlawful discrimination should be reported. For more information on company policy, refer to the sexual harassment policy posted at your location.

### What is sexual harassment?

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct if:

- Submission to such conduct is made either explicitly or implicitly a term or a condition of an individual's employment
- Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual
- Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment

*We're committed to creating a work environment based on mutual respect and dignity.*

Exhibit _A_ Page _37_ of _64_

*Conduct*

## Examples of sexual harassment

Examples of sexual harassment include, but are not limited to the following:

- Conditioning promotion, demotion, performance evaluations and the like upon submission to sexual favors
- Touching that is unwanted, uninvited, or offensive
- Displaying sexually suggestive or explicit material, pictures, or cartoons
- Relating sexually suggestive or explicit stories or "jokes"
- Making sexually suggestive or explicit gestures

## What are other forms of harassment?

Harassment because of one's race, color, religion, gender, national origin, age, disability, or sexual orientation is defined as verbal or physical conduct that does the following:

- Denigrates or shows hostility or aversion toward an individual because of his or her race, color, religion, gender, national origin, age, disability, or sexual orientation, or that of the individual's relatives, friends or associates.
- Has the purpose or effect of creating an offensive work environment, unreasonably interferes with an individual's work performance, or otherwise adversely affects an individual's work performance

## Examples of Other Forms of Harassment

Examples of such harassment include, but are not limited to the following:

- Making derogatory ethnic or racial statements, or belittling one's religion or religious practices
- Perpetuating stereotypes about one's age, gender, etc. ("You're too old to change your way", "This is women's work")
- Refusing to assist an associate or Customer because of his or her race, gender, etc.
- Disparaging the sexual orientation of an associate, his or her co-workers, or a Customer

## Reporting a Complaint

If you believe that you are being sexually harassed by a co-worker, supervisor, Customer, or vendor, or if you believe you are being harassed by a co-worker, supervisor, Customer, or vendor because of your race, color, religion, gender, national origin, age, disability, or sexual orientation, you should take these steps:

- Firmly and clearly tell the person who is harassing you that his or her behavior is unwelcome and should stop at once. If possible, take a witness to this discussion.
- Write a statement about the incident and what you did to stop it, including dates, times, and places. This statement will be helpful if the harassment continues and the company needs to investigate.

⑪

Exhibit ___A___ Page __38__ of _64_

# *Conduct*

200126

**Note:** If you are uncomfortable telling the person who is harassing you to stop, then proceed to the following reporting procedure:

Report the incident to your immediate supervisor, another member of management, or the Employee Relations Department. Your report should be as specific as possible and include the following:

- The name of the person who is harassing you
- A description of the conduct
- The effect that conduct is having on your working conditions and work performance
- The names of any witnesses who could assist in the investigation

## *Complaint Resolution*

Misunderstandings or conflicts can arise in any organization. To ensure effective working relationships, it is important that such matters be resolved before serious problems develop. Most incidents resolve themselves naturally; however, should a situation persist that you believe is harmful to you or to Fred Meyer, you should follow the procedure described here to resolve your complaint.

To receive timely and fair consideration, it is important that all complaints be presented within 20 days of the occurrence. If your complaint is not resolved to your satisfaction, proceed to the next step within 10 days of the resolution made in the previous step.

**Step 1:**

Discuss the problem with your supervisor, the majority of concerns and problems can normally be resolved here. If, however, you don't believe a discussion with your supervisor is appropriate, proceed directly to Step 2.

**Step 2:**

If your problem is not resolved after discussing it with your supervisor or if you feel discussing the problem with your supervisor is inappropriate, request a meeting with your department manager (or Store Director). The manager will consider the facts, conduct an investigation, and may also review the matter with a member of Human Resources. You will normally receive a response regarding your complaint within five working days.

**Step 3:**

If you are not satisfied with your manager's decision and wish to pursue the complaint further, you may prepare a written summary of your concerns and request that the matter be reviewed by the Vice President of Employee Relations. After a full examination of the facts, the Vice President of Employee Relations will normally advise you of the decision within ten business days. The decision will be final.

Fred Meyer does not tolerate any form of retaliation by supervisors against associates using this procedure. The procedure should not be construed, however, as preventing, limiting or delaying Fred Meyer from taking disciplinary action against any individual, up to and including termination, in circumstances where the company considers disciplinary action appropriate.



Exhibit _A_ Page _39_ of _64_

200168



Employee Handbook

FredMeyer



What on your list today? You'll find it at

*FredMeyer*

Fred Meyer Stores
3800 SE 22nd Avenue
Portland, Oregon 97202
(503) 232-8844

fredmeyer.com

EXHIBIT

M2B74 1/02

Exhibit ___ Page 42 of 64

200185

## Political contributions and involvement

The Company encourages all employees to vote and to participate fully in the political process. Such participation shall be entirely personal. The Company has established a political action committee (PAC), which operates in accordance with the rules of the Federal Election Commission and the rules of the appropriate state authority. Participation is entirely voluntary and coercion to contribute is prohibited.

In those states where the law permits, contributions to candidates or ballot issues may be made by the Company in moderation, but only with the approval of senior management and in strict compliance with public reporting regulations.

## Conflicts of interest

The term "conflict of interest" describes any circumstance that could cast doubt on an employee's ability to act with total objectivity with regard to the Company's interests. Employees should avoid situations in which there is, or may seem to be, a conflict between the personal interests of the employee and the interests of the Company.

While it is impossible to anticipate every potential conflict, here are a few examples:

- Ownership in concerns with which the Company competes or with which it does business (other than modest investments in stocks listed on a recognized securities exchange or on NASDAQ)

- Buying, leasing or selling property from or to the Company or near locations known to be of interest to the Company

- Accepting payments, services, or loans from, or rendering consulting services to, persons or concerns dealing, or contemplating dealing, with, or in competition with, the Company

- Similar activities or interests by members of your immediate family

- The active commitment of time devoted to the management of any other business enterprise that would take time away from the employee's normal work schedule

## Confidential information

As a publicly owned company, Fred Meyer is governed by strict securities laws regarding the dissemination of information about the Company to the public. The Company's ability to compete, moreover, depends upon protection of its confidential information and trade secrets. In business and personal conversations, employees should limit comments about the Company to information that has been publicly released by the Company. Non-public information about the Company should be treated as confidential. No information about sales, earnings, competitive activities, systems, technology, proposed company developments or activities, or products should be disclosed; employees must adhere to practices designed to safeguard that information.

For more information, refer to corporate policy 4.1, *Business Ethics*.

## Violations

If Fred Meyer management has a reasonable basis to believe an employee has violated this policy, it will be met with disciplinary action, up to and including termination.

## Questions

Employees finding themselves in situations where they are uncertain of the intent of this policy, or how it applies to a specific situation, should ask their supervisor, the Vice President of Employee Relations, the Group Vice President of Human resources or the President for clarification.

# Sexual Harassment and Other Forms of Harassment

Fred Meyer is committed to a workplace free from unlawful discrimination, which includes sexual harassment and other forms of harassment because of one's race, color, religion, gender, national origin, age, disability, or sexual orientation.

Any form of harassment undermines the company's insistence upon employee integrity and is considered serious misconduct. No employee, either male or female, should be subjected to offensive conduct or innuendo, either verbal or physical, from co-workers, supervisors, customers, or vendors.

All employees have a responsibility to maintain the workplace free of harassment and to report such misconduct when it occurs, just as any form of unlawful discrimination should be reported.

For more information on Company policy, refer to the sexual harassment policy posted at your location.

## What is sexual harassment?

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct if:

- Submission to such conduct is made either explicitly or implicitly a term or a condition of an individual's employment

- Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual

- Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment

## Examples of sexual harassment

Examples of sexual harassment include, but are not limited to the following:

- Conditioning promotion, demotion, performance evaluations and the like upon submission to sexual favors

- Touching that is unwanted, uninvited, or offensive

- Displaying sexually suggestive or explicit material, pictures, or cartoons

- Relating sexually suggestive or explicit stories or "jokes"

- Making sexually suggestive or explicit gestures

## What are other forms of harassment?

Harassment because of one's race, color, religion, gender, national origin, age, disability, or sexual orientation is defined as verbal or physical conduct that:

- Denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, gender, national origin, age, disability, or sexual orientation, or that of the individual's relatives, friends or associates, and

- Has the purpose or effect of creating an offensive work environment, unreasonably interferes with an individual's work performance, or otherwise adversely affects an individual's work performance

## Examples of other forms of harassment

Examples of such harassment include, but are not limited to the following:

- Making derogatory ethnic or racial statements, or belittling one's religion or religious practices

- Perpetuating stereotypes about one's age, gender, etc. ("You're too old to change your ways," "This is women's work")

- Refusing to assist an employee or customer because of his/her race, gender, etc.

- Disparaging the sexual orientation of an employee, his/her co-workers, or a customer

## Reporting a complaint

If you believe that you are being sexually harassed by a co-worker, supervisor, customer, or vendor, or if you believe you are being harassed by a co-worker, supervisor, customer, or vendor because of your race, color, religion, gender, national origin, age, disability, or sexual orientation, you should take these steps:

- Firmly and clearly tell the person who is harassing you that his or her behavior is unwelcome and should stop at once. If possible, take a witness to this discussion.

- Write a statement about the incident and what you did to stop it, including dates, times, and places. This statement will be helpful if the harassment continues and the company needs to investigate.

*Note:* If you are uncomfortable with telling the person who is harassing you to stop, then proceed to the reporting procedure that follows.

- Report the incident to your immediate supervisor, another member of management, or the Employee Relations Department. Your report should be as specific as possible, including:
  - The name of the person who is harassing you
  - A description of the conduct
  - The effect that conduct is having on your working conditions and work performance
  - The names of any witnesses who could assist in the investigation

# Complaint Resolution

Misunderstandings or conflicts can arise in any organization. To ensure effective working relationships, it is important that such matters be resolved before serious problems develop. Most incidents resolve themselves naturally; however, should a situation persist that you believe is harmful to you or to Fred Meyer, you should follow the procedure described below to resolve your complaint.

To receive timely and fair consideration, it is important that all complaints be presented within 20 days of the occurrence. If your complaint is not resolved to your satisfaction, proceed to the next step within 10 days of the resolution made in the previous step.

**Step 1:**

Discuss the problem with your supervisor; the majority of concerns and problems can normally be resolved here. If, however, you don't believe a discussion with your supervisor is appropriate, proceed directly to step 2.

**Step 2:**

If your problem is not resolved after discussing it with your supervisor or if you feel discussing the problem with your supervisor is inappropriate, request a meeting with your department manager (or Store Director). The manager will consider the facts, conduct an investigation and may also review the matter with a member of Human Resources. You will normally receive a response regarding your complaint within five working days.

**Step 3:**

If you are not satisfied with your manager's decision and wish to pursue the complaint further, you may prepare a written summary of your concerns and request that the matter be reviewed by the Group Vice President of Human Resources. After a full examination of the facts, the Group Vice President of Human Resources will normally advise you of the decision within five working days. This decision will be final.

Fred Meyer does not tolerate any form of retaliation by supervisors against employees using this procedure. The procedure should not be construed, however, as preventing, limiting or delaying Fred Meyer from taking disciplinary action against any individual, up to and including termination, in circumstances where the Company considers disciplinary action appropriate.

200186

Exhibit _A_ Page _42_ of _64_



# Sexual Harassment and Other Forms of Harassment

**Scope and policy owner**

This policy applies to all Fred Meyer Stores employees. Route all policy questions and suggested updates to the Group Vice President, Human Resources.

**Violation of this policy**

Proven sexual harassment, or harassment because of an individual's race, color, religion, gender, national origin, age, disability or sexual orientation, will result in discipline up to and including discharge.

**Philosophy**

Fred Meyer is committed to a workplace free from unlawful discrimination, which includes sexual harassment and other forms of harassment because of one's race, color, religion, gender, national origin, age, disability or sexual orientation.

Any form of harassment undermines the company's insistence upon employee integrity, and is considered serious misconduct. No employee, either male or female, should be subjected to offensive conduct or innuendo, either verbal or physical, from co-workers, supervisors, customers or vendors.

All employees have a responsibility to maintain the workplace free of harassment and to report such misconduct when it occurs, just as any form of unlawful discrimination should be reported.

**What is sexual harassment?**

*Sexual harassment* is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical if:

- submission to such conduct is made either explicitly or implicitly a term or a condition of an individual's employment,
- submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or
- such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

**Examples of sexual harassment include, but are not limited to the following:**

- Conditioning promotion, demotion, performance evaluations and the like upon submission to sexual favors.
- Touching that is unwanted, uninvited or offensive
- Displaying sexually suggestive or explicit material, pictures or cartoons.
- Relating sexually suggestive or explicit stories or "jokes."
- Making sexually suggestive or explicit gestures.

**What are other forms of harassment?**

*Harassment* because of one's race, color, religion, gender, national origin, age, disability or sexual orientation is defined as verbal or physical conduct that:

- denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, gender, national origin, age, disability or sexual orientation, or that of the individual's relatives, friends or associates, and
- has the purpose or effect of creating an offensive work environment, unreasonably interferes with an individual's work performance, or otherwise adversely affects an individual's work performance.

**Examples of other forms of harassment include, but are not limited to the following:**

- Making derogatory ethnic or racial statements, or belittling one's religion or religious practices.
- Perpetuating stereotypes about one's age, gender, etc. ("You're too old to change your ways." "This is women's work.")
- Refusing to assist an employee or customer because of his/her race, gender, etc.
- Disparaging the sexual orientation of an employee, his/her associates, or a customer.

**Reporting a complaint**

If you believe that you are being sexually harassed by a co-worker, supervisor, customer or vendor, or if you believe you are being harassed by a co-worker, supervisor, customer or vendor because of your race, color, religion, gender, national origin, age, disability or sexual orientation, you should take these steps:

| Step | Action |
|---|---|
| 1 | Firmly and clearly tell the person who is harassing you that his or her behavior is unwelcome and should stop at once. If possible, take a witness to this discussion. |
| 2 | Write a statement about the incident and what you did to stop it, including dates, times and places. This statement will be helpful if the harassment continues and the company needs to investigate.<br>*Note:    If you are uncomfortable with telling the person who is harassing you to stop, then proceed to the reporting procedure below.* |
| 3 | Report the incident to your immediate supervisor, another member of management, any person in the Human Resources Department, the President, General Manager, Distribution Manager or call the Kroger Helpline at 1-800-689-4609; TDD, 1-877-673-6803. Your report should be as specific as possible, including:<br>• the name of the person who is harassing you<br>• a description of the conduct<br>• the effect that conduct is having on your working conditions and work performance<br>• the names of any witnesses who could assist in the investigation. |

Exhibit _A_ Page _43_ of _64_

200032

**Investigating a complaint**

All claims of harassment will be investigated promptly and will be handled professionally and as confidentially as circumstances permit. Your further participation in the investigation may be necessary, and you will be informed of the outcome. The Company will not tolerate reprisals or retaliation against persons reporting alleged harassment or anyone participating in the investigation of the alleged harassment.

```
60XXFRP                                      FRED MEYER, INC.                          Page -    28
                                         Status Change Requests                        Date -  2/06/02

Function  : XFR    Transfer to New Location                 Status: Pending

Employee # : 888508  BRELAND, JAMES L                       SSN # :  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
Reason Code : 090    Transfer Request

       ---------------------------------------------------------------------------------------------
                    Requested Transfer / PIA                    Current Employee Information
       ---------------------------------------------------------------------------------------------

Effective Date    : 01/27/02

Store/Location    : 71           Dimond                        656           SE Anchorage

Payroll Section   : LPS          Loss Prevention Specialist    LPS           Loss Prevention Specialist

Contract          : 024600       Alaska Loss Prevention        024600        Alaska Loss Prevention

Job Type          : 302051 / 0020  Loss Prevention Specialist  302055 / 0030  Security Lot Guard

Pay Rate          : 11.0000      Apprentice Step 2             10.0000       Apprentice Step 3

Apprentice Units  : 1,040.00     Hours                         2,117.84      Hours

Employee Status   : 3            Part-time Permanent           3             Part-time Permanent
```

```
==== Routing History ==================
Date & Time       By User                          Action            Chg        Sent to
-----------       -------                          ------            ---        -------
01/29/02 14:22    267204   WENDT, TRACI J          Initiated                    62657   KOLIAS, NITA G
01/30/02  4:56    62657    KOLIAS, NITA G          Forward w/o Apprvl   Yes      252504  HUEBNER, RONALD G
02/05/02  9:03    252504   HUEBNER, RONALD G       Approved                     252286  BRINGHURST, JOSEPH S
02/06/02  7:21    252286   BRINGHURST, JOSEPH S    Apprv & Fwd to P/R           Vers-001  Payroll Team
                  Vers-001  Payroll Team           Pending
```

```
==== Comments ====================
Date & Time       By User                          Comments
-----------       -------                          --------
02/05/02  9:02    F252504   HUEBNER, RONALD G      SCOTT,
                                                   THIS IS ACTUALLY AN RTS FROM JO STORE REPLACING A LPS THAT TRASHS-
                                                   FERRED TO JO FROM DA.
                                                   PLEASE APPROVE.
                                                   THANKS,
                                                   HUEB
```

$17.40 \times 1.0 = \boxed{17.40}$

EXHIBIT

```
60XXFRP                                    FRED MEYER, INC.                                Page -      5
                                       Status Change Requests                             Date -    8/01/02

Function   : XFR    Transfer to New Location          Status:  Pending

Employee # :   888508  BRELAND, JAMES L               SSN # :  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
Reason Code : 090      Transfer Request

------------------------------------------------------------------------------------------------------
              Requested Transfer / PIA                         Current Employee Information
------------------------------------------------------------------------------------------------------
Effective Date    : 07/21/02

Store/Location    :  18         Anchorage East              71         Dimond

Payroll Section   : LPS         Loss Prevention Specialist  LPS        Loss Prevention Specialist

Contract          : 024600      Loss Prevention Alaska      024600     Loss Prevention Alaska

Job Type          : 302051 / 0020  Loss Prevention Specialist  302051 / 0020  Loss Prevention Specialist

Pay Rate          :  11.0000    Apprentice Step 2            11.0000    Apprentice Step 2

Apprentice Units  : *CURRENT                                 1,749.99   Hours

Employee Status   : 3           Part-time Permanent          3          Part-time Permanent
```

```
==== Routing History ====================
Date & Time         By User                              Action           Chg        Sent to
-----------------   ----------------------               -----------      ---        -----------------------
07/25/02 10:17      390137  HAIR, DENYS M                Initiated                   172795  BLEWETT, MICHAEL J
08/01/02 11:55      172795  BLEWETT, MICHAEL J           Approved         Yes        126853  SANDENO, GREGORY L
08/01/02 12:52      126853  SANDENO, GREGORY L           Apprv & Fwd to P/R          Vers-001 Payroll Team
                    Vers-001 Payroll Team                Pending
```

```
==== Comments ===========================
Date & Time         By User                              Comments
-----------------   ----------------------               -------------------------------------------------
08/01/02 12:52      F126853   SANDENO, GREGORY L         LATERAL ONLY.
```



Exhibit _A_ Page _45_ of _64_

200017

18/LP5

## APPREHENSION OF A SUSPECT

When you apprehend a suspect for shoplifting or any other crime, you are effecting an arrest. An arrest, by definition, is to deprive a person of his liberty by legal authority - taking custody of another for the purpose of holding or detaining him to answer a criminal charge. All that is required for an "arrest" is some act by you indicating your intention to detain or take a person into custody, and thereby, subject that person to your control and will. No formal declaration of arrest is required. If you hold a special police commission, you are given legal authority to arrest a person committing a criminal offense on our property. If you are not commissioned, you may effect an arrest as a private citizen. **When you have restrained an individual's personal liberty or freedom of movement (however slight), an arrest has taken place.**

1.      Prior to apprehending a suspect for shoplifting, the following criteria must be met:

   a.      <u>You must</u> observe the suspect enter the section.

   b.      <u>You must</u> observe the suspect remove the merchandise from the display and know exactly what that item is.

   c.      If the item is concealed, <u>you must</u> observe that concealment and know exactly where it is.

   d.      <u>You must</u> maintain continuous observation of the suspect and merchandise from the time he/she removes the merchandise from the display until he/she exits the store. Once concealed, observation of the concealment area must be continuously observed.

   e.      <u>You must</u>, for purposes of safety, have another employee follow you out of the store to act as a witness and to provide assistance, if necessary.

## <u>Remember:</u>

The golden rule of shoplifting apprehensions is:

## <u>FOLLOW PROCEDURE, AND "IF IN DOUBT, LET IT OUT"</u>

### Acknowledgement of understanding:

I have read and understand the policy regarding the required elements to make a shoplift apprehension. I further understand all policies and procedures for making a shoplift apprehension within Fred Meyer as described in section #400 of the Loss Prevention Manual.

Printed Name  _James Brainard_          Date _1/31/04_

Your Signature  _Brainard_          Date _1/31/04_

RLPM/LPM Acknowledgment of review:

I have reviewed this policy/procedure with the above listed Loss Prevention employee and am satisfied that the employee understands the policy/procedure.

Printed Name _Brian K. Stewart_          Date _1/31/04_

Your Signature _B K S_          Date _1/31/04_



Exhibit _A_ Page _46_ of _64_

18/LPS

**To:**        All Loss Prevention Employees

**Subject:**    Review / Discipline of Non-Arrest Apprehensions

**Review of Facts:**  The Regional Loss Prevention Manager will personally review the circumstances surrounding each non-arrest apprehension and non-policy apprehension, and the Loss Prevention person will be given an opportunity to explain, in their own words, all circumstances.

A.    The RLPM will follow up with each person making a non-arrest apprehension.  This should be in person, but can be done over the phone in remote stores. RLPM will need to review any available video of the non-arrest apprehension.  The Loss Prevention Manager will be involved in the review process if the non-arrest was by a Loss Prevention subordinate within his/her location.

During this review process, the Loss Prevention employee will not be involved in any type of shoplift surveillance, including use of cameras to aid other Loss Prevention employees in the apprehension or detection of theft.

B.    All non-arrest stops and final disciplinary action, will be discussed by the RLPM's on the next Regional Conference call (typically on Mondays of each week). This will ensure that each region is reacting in a similar fashion to the disciplinary actions taken.

Loss Prevention Manager (if a subordinate was responsible for the non-arrest) will present the situation to the RLPM's and Corporate LP staff.

C.    RLPM is to complete the RLPM NON-ARREST APPREHENSION REVIEW FORM. A copy of the form is to go into the employee's file with a copy to SXS.

The Store Director should be involved in the disciplinary process for any LPS or LPM. Follow up needs to occur within 7 days of the non-arrest stop.

**Disciplinary Action:** As with all disciplinary action, each case needs to be reviewed on a case-by-case basis, and the action taken appropriate for the persons involved and the judgment used.  Length of service, prior disciplinary action and overall judgment used needs to be taken into account.  As always, termination of employment is always an option when the judgment of the individuals involved and their actions, are so grievous and severe, that it places Fred Meyer at increased risk to civil liability.

The Loss Prevention person may appeal the decision for disciplinary action to the Loss Prevention Director or Human Resource Department.

The following disciplinary actions are the minimum that will be taken:

## Error in Judgment – Apparent Disregard for Corporate Loss Prevention Policy

**1st within 24 months**:  Written warning including suspension of employment without pay (3 days for LPS / 7 days for LPM).  Re-read section 400 of the LP Manual and document that they have read and understand the policies within.  LPS/LPM will write a report to the RLPM relating the facts of the non-arrest, what went wrong, what should have occurred, and the liability they have put themselves and Fred Meyer in.

**2nd within 24 months**:  Termination of employment

Exhibit _A_ Page _47_ of _64_

18/LPS

Error in Fact

1st within 12 months: Verbal Warning

2nd within 12 months: Written Warning

3rd within 12 months: Suspension of employment for three days for LPS or First/Last/Final letter of warning for LPM.

4th within 12 months: Termination of employment

Additionally, any of the following actions will result in immediate termination of employment:

- A. The Failure to report any non-arrest stop within 1 hour of its occurrence.
- B. Any non-arrest stop made before the Loss Prevention person has been released from Phase 2 training.
- C. Any gross disregard of Policy and or any grave lack of judgment that causes a non-arrest apprehension.
- D. Any continued or uncorrected lack of judgment / lack of fact which persists after re-training and education have been documented from previous incident.

Remember:

The golden rule of shoplifting apprehensions is:

FOLLOW PROCEDURE. AND "IF IN DOUBT. LET IT OUT"

Acknowledgement of understanding:

I have read and understand the policy on non-arrest apprehensions and the disciplinary guidelines.  I further understand the policies and procedures for making a shoplift apprehension within Fred Meyer as described in section #400 of the Loss Prevention Manual.

Printed Name _JAMES BREELAND_          Date _1/31/04_

Your Signature _Breeland_          Date _1/31/04_

RLPM/LPM Acknowledgment of review:

I have reviewed this policy/procedure with the above listed Loss Prevention employee and am satisfied that the employee understands the policy/procedure.

Printed Name _Brian K. Stewart_          Date _1/31/04_

Your Signature _B K_          Date _1/31/04_

Exhibit _A_ Page _48_ of _64_

3

                  NOTE 03/22/04 19:25:33 F888508
       To: Kevin Ruoff                              F149885 - FMHOST
     From: James Breland                            F888508 - FMHOST
     Date: 03/22/04
  Subject: Situation
--------------------------------------------------------------------
Kevin

    I just wanted to say, during your last visit to Anchorage Ak, I appreciate
you taking a few minutes out of your busy schedule to speak with me.  I did
not really get into any specifics concerning the situation between myself
and LPM Stewart because basically I figured, I'd just transfer and not really
for a lack of a better term have to deal with Mr. Stewart.

I'll do a quick synopsis of my employment with Fred Meyer.  I was hired as a
RTS by LPM Becker on 1/4/2002.  I remained at Store 656/JO shortly before grand
opening during which time LPM Kreiger hired me as a part-time LPS for the Dia-
mond location.  I remained at the Diamond location for several months and
worked every Sunday's at Store #18/AE as they where short handed.  I continued
to work at the Diamond location until then RLPM Hubner notified myself along
with LPM Kreiger that they would be doing away with the part-time position and
be moving the hours along with me (LPS Breland) to the Muldoon/Debarr location.
So basically I had no choice in the matter as the position at Diamond was given
to the Muldoon/Debarr location Store #18.

Hence the working relationship of myself and LPM Stewart.  Before coming to the
Muldoon/Debarr location, I was told by other LPM's as well as LPS's that Mr.
Stewart was a racist.  I decided to give myself a opportunity to get to know
Mr. Stewart and not base my opinion off of what other's had to say concerning
LPM Stewart.  So here I stand as a minority with my views and opinions of work-
ing for and with LPM Stewart.

I'll start with education and knowledge is the key to anything, ignorance is a
disease that can be cured by both education and knowledge.  LPM Stewart lacks
both education and knowledge concerning diversity, equal opportunity, equal
rights and discrimination.  During the span of working for and with LPM Stewart
I find that he's a decent person with some issue's concerning race.  LPM Stewart
has not directly called or address me in a derogatory manner concerning race
but I personally have heard him make on quite a few occassions derogatory/in
appropriate comments concerning onces race with in the work place.

I also will say that, I feel that LPM Stewart tends to take what I say more
personal because, I am a minority.   I really feel that LPM Stewart tries
and he's genuinely a decent person that I do get a long with despite the fact
he's made derogatory/inappropriate comments around me.  I'll clairfy around
me, LPM Stewart I believe nows what he's doing is wrong and by that I mean
everytime he's made a derogatory/inappropriate remark Mr. Stewart assumed that
I was on the floor at that time or he had no knowledge of me being in the
office during the time he made the derogatory/inappropriate remark.

I also would like to say, that not all people feel the way LPM Stewart may
feel about certain races.  With that being said, I had a co-worker transfer
to another store because of LPM Stewart what I deem to be a poor attitude



Exhibit _A_ Page _49_ of _64_

Plaintiff #0015

NOTE 03/22/04 21:10:05 F888508

To: Kevin Ruoff                                    F149885  - FMHOST
From: James Breland                                F888508  - FMHOST
Date: 03/22/04
Subject: Situation
-------------------------------------------------------------------
my co-worker Tony Bonini who now works at Store 71/DA left because of the
derogatory/inappropriate remarks made by LPM Stewart on a daily basis.  So I
like to say that all though Mr. Bonini is the same race as LPM Stewart he
did not have the same views.  I feel LPM Stewart imposes his views and makes
derogatory/inappropriate remarks in the presents of those of his same race
thinking that they may feel the same way he does.   Mr. Bonini is an example
that not those of the same race feel or have the same views as Mr. Stewart.

I've thought about this situation for sometime, at first I wanted to transfer
but why?  I'm not the one with the problem.Yes, the derogatory/inappropriate
remarks offend me but I shouldn't have to inconvience myself because LPM
Stewart creates a hostile work enviorment for employees with his racial views
and derogatory/inappropriate remarks.  I firemly believe that LPS Bonini would
still be working at Store 18/AE if it was for this type of attitude displayed
by LPM Stewart.  LPM Stewart made it very uncomfortable for LPS Bonini to
work in that type of environment. I also believe that LPM Becker may have
address this problem in the pass but I'm not sure.

I'll close with this,Mr. Ruoff.  Mr. Stewart has a disease and the type
of disease that Mr. Stewart has for the type of job that we do can be very
detrimental to those who work for him and around him.  As an LPM you are
responsible for training, directing, and molding LPS's.  A new LPS can be
very impressionable and with this job a person's view can be obscured when
being trained, directed or molded by someone with the disease that LPM Stewart
has. In our job we deal with a variety of people from different nationalities
religion, race etc....   This is where LPM Stewart view can be detrimental to
the crew it self which it has already effected, the perception of the store a
the people that work with in it.  The customers that shop at the store etc...
It has a domino effect especially concerning what we do as security.  So I
shouldn't have to be transferred or inconvenience myself in order to have a
pleasant work environment.


                    Sincerely


                    James Breland  LPS AE/18


                                    Exhibit _A_ Page _50_ of _64_

                                    Plaintiff #0016

```
03/24/04  15:43              User F149885                    Printer ABV0
                  REPLY 03/23/04 22:37:22 F888508
            To: Kevin Ruoff                                  F149885  - FMHOST
          From: James Breland                                F888508  - FMHOST
          Date: 03/24/04
       Subject: Situation
     Reference: Your note of 03/23/04 07:58 attached below
```
--------------------------------------------------------------------------------
Kevin

   I apologize for all the mispell words and the fact I didn't discuss this
long standing situation.  I was in between the thought of should I say
something or not. I kind of felt like LPS Bonini, If I transfer then I would
not have to deal with the derogatory/inappropriate remarks any longer but then
said to myself that, this wouldn't be right.  It wouldn't be fair to those
new LPS's coming after my transfer into a situation that was not corrected be-
cause no one said anything.
So I decided to say something but your right I probably should have brought the
topic up during your last visit the night we talked.  Well to say the least
I've only heard the derogatory/inappropriate remarks on six occassions but
I'm sure if you decide to talk with LPS Bonini and LPM Becker they will
express to you that LPM Stewart uses those remarks along with other's on a
daily basis when those of his same race and gender are around. Again I'll say
I think LPM Stewart is a decent person and we do generally get a long pretty
good but I think a little education on these topics will go a long way and
hopefully he'll apply what he's learned and have a better understanding of
diversity, equal rights, tolerance, discrimination etc...   I can't speak for
everyone but my feeling is that those who have worked for or with LPM Stewart
figured it was just easy to let it go because that's just how he (LPM Stewart)
is and didn't feel like getting into a confrontation, Kevin I think educating
LPM Stewart is the key.


                                   Thanks jb


------------------------- ATTACHED NOTE -------------------
```
            To: James Breland                               F888508  - FMHOST
          From: Kevin Ruoff                                 F149885  - FMHOST
          Date: 03/23/04
       Subject: Situation
     Reference: Your note of 03/22/04 21:10 attached below
```
--------------------------------------------------------------------------------
James

Thank you for your comments in this note.  This is the first complaint that
I have received regarding Mr. Stewart and any comments that he has made or
with regards to his attitude. I wish you had discussed this with me in person
last week when I sat down with you to discuss your feelings about working at
AE and with Mr. Stewart.

I will follow up on your note, and will work towards changing the environment
of the LP department at AE.  I would appreciate you keeping me aware of any

Exhibit  *A*  Page  *51*  of  *64*

further issues or comments.

I further want you to know that I have no plans to transfer you out of AE, but
will work with you on any request you may present to transfer.  As you are
aware, there is a lateral transfer to DA available if you are interested.

Again, please keep me appraised of any issues or problems at AE and/or with
Mr. Stewart.

Kevin

------------------------------ ATTACHED NOTE ------------------------------

        To: Kevin Ruoff                              F149885  - FMHOST
        From: James Breland                          F888508  - FMHOST
        Date: 03/22/04
        Subject: Situation
--------------------------------------------------------------------------
my co-worker Tony Bonini who now works at Store 71/DA left because of the
derogatory/inappropriate remarks made by LPM Stewart on a daily basis.  So I
like to say that all though Mr. Bonini is the same race as LPM Stewart he
did not have the same views.  I feel LPM Stewart imposes his views and makes
derogatory/inapproapirate remarks in the presents of those of his same race
thinking that they may feel the same way he does.   Mr. Bonini is an example
that not those of the same race feel or have the same views as Mr. Stewart.

I've thought about this situation for sometime, at first I wanted to transfer
but why?  I'm not the one with the problem.Yes, the derogatory/inappropriate
remarks offend me but I shouldn't have to inconvience myself because LPM
Stewart creates a hostile work enviornment for employees with his racial views
and derogatory/inappropriate remarks.  I firemly believe that LPS Bonini would
still be working at Store 18/AE if it was for this.type of attitude displayed
by LPM Stewart.  LPM Stewart made it very uncomfortable for LPS Bonini to
work in that type of environment. I also believe that LPM Becker may have
address this problem in the pass but I'm not sure.

I'll close with this, I like LPM Stewart he's a decent person I think he means
well.  Mr. Stewart and I get a long pretty good despite what I've just
express to you in this OV Mr. Rucff.   Mr. Stewart has a disease and the type
of disease that Mr. Stewart has for the type of job that we do can be very
detrimental to those who work for him and around him.  As an LPM you are
responsible for training, directing, and molding LPS's.  A new LPS can be
very impressionable and with this job a person's view can be obscured when
being trained, directed or molded by someone with the disease that LPM Stewart
has. In our job we deal with a variety of people from different nationalities,
religion, race etc....   This is where LPM Stewart view can be detrimental to
the crew it self which it has already effected, the perception of the store and
the people that work with in it.  The customers that shop at the store etc...
It has a domino effect especially concerning what we do as security.  So I
shouldn't have to be transferred or inconvenience myself in order to have a
pleasant work environment.

I'll say again, I like Mr. Stewart and he's not a bad person to work for and we

                          Exhibit _A_ Page _52_ of _64_

actually get a long pretty good depite all the remarks I've heard.  LPM Stewart
has a disease concerning race but I think knowledge is power and ignorance can
be cured, education is the key to success and the will to succeed can only
make LPM Stewart a better person.

Sincerely

James Breland  LPS AE/18

James Breland

10/30/2004 02:06 PM

To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo, Scott Bringhurst/OPS/FM/KrogerCo@KrogerCo
cc: Ryan S Krieger/Stores/FM/KrogerCo@KrogerCo
Subject: COMPLAINT FOLLOW UP

To Whom It May Concern:

Mr. Ruoff I'm following up on a complaint/issue that was office vision to you 6 months ago concerning Mr. Bryan Stewart. In April 2004 a complaint of Mr. Stewart making racial slurs and inappropriate racial comments in the work environment was sent to you via office vision. At the time the complaint was filed you informed me you would looked into the situation and decided you would let this complaint be taken care of at the store level.   The complaint was then forwarded from you to the Store Director Mike Johnson who in turn forwards the complaint to Mr. Stewart.

Mr. Stewart after reading the complaint called me at my day job to apologize for making the racial slurs and inappropriate racial comments at which time he divulged that he and the Store Director talked. I then came to Fred Meyer for work as schedule and was invited to the Store Director office by Mike Johnson. Once in the office Mr. Johnson stated he had sent the complaint to inform Mr. Stewart of the situation and that he also talked with Mr. Stewart who admitted to making the racial slurs and inappropriate racial comments. Mike Johnson and myself discussed the situation concerning Mr. Stewart that I thought to be positive.  Mr. Johnson also stated he would follow up with me about the complaint and the preventative measure to help with Mr. Stewart.

After 6 months nothing has happened with the complaint and it seems as if everyone has swept the incident under the carpet. I believe nothing has happen with this complaint because there is a serious conflict of interest involved.  The Store Director has knowledge of the complaint as well as verbal admittance from Mr. Stewart stating he made these racial slurs and comments. It is in my observation during the months after the complaint and the months before the August 6, 2004 transfer of Mr. Stewart from store #18 to store #71 that Mr. Johnson had no intention on pursing the complaint involving the racial slurs and comments from Mr. Stewart.

Once Mr. Johnson became Store Director I observed what I deem to be an inappropriate relationship between the Store Director and the Loss Prevention Manager.  Mr. Johnson and Mr. Stewart befriended one another and would hangout on occasions go house hunting or fishing which in turn distorted Mr. Johnson's ability to be impartial concerning this complaint, which is a huge disservice.  Also between the time of the complaint and Mr. Stewart transfer I observed several other injustices, during the remodel Mr. Stewart would silicate the help of the RTS but on every occasion would only ask the same two males which happen to be minorities (Hispanic and Samoan) to paint, move, and clean the LP office among other things. It's very disturbing as this could be viewed as institutional discrimination as he never once ask a non-minority to do these task. Also both these individuals showed interested in the open unbudgeted position that was never posted Mr. Stewart never once offered or asked the minority workers to apply for the position but told a non-minority RTS to apply which the individual was offered and accepted the



Exhibit _A_ Page 54 of 64

Plaintiff #0017

job.

I find all these actions very disturbing and feel that an independent agency should look into my complaint among other issues since the Store Director could not be an impartial party and conduct an investigation to take the appropriate action necessary.   In Security/Loss Prevention especially a management position an individual with these tendencies and personal views on other races can do a lot of harm than good and when an egregious act like this done especially in a sensitive position as a Loss Prevention Manager it is very important for someone to be proactive in making sure that this type of behavior is not tolerated and some type of punishment is incorporated.  This issue will be forwarded to an impartial party or agency to investigate since the issue at store level was not pursued and resolved in an appropriate manner.


James Breland
Loss Prevention

Store #18                                                        Fred Meyer

Plaintiff #0018

**Kevin Ruoff**          To: James Breland/Stores/FM/KrogerCo@KrogerCo
11/03/2004 08:35 AM      cc: Ryan S Krieger/Stores/FM/KrogerCo
                         Subject: Please call me

James

Please call me at 206-409-7421 when you get in today.

thanks,

Kevin

Kevin R. Ruoff
Zone 4 Regional Loss Prevention Supervisor
425-582-4046
206-982-6009 (Pager)

Exhibit __A__ Page _56_ of _64_

Plaintiff #0019

**Mike R Johnson**

11/11/2004 06:30 PM

To:  James Breland/Stores/FM/KrogerCo@KrogerCo, Ryan S
     Krieger/Stores/FM/KrogerCo@KrogerCo

cc:

Subject:  Meeting

I would like to set up a time for us three to talk on Friday or Saturday. Ryan please follow with James on a
good time for all of us. I am available both days.

Thanks

Mike Johnson
018-Anchorage East
Store Director

Exhibit _A_ Page _57_ of _64_

Plaintiff #0020



**Ryan S Krieger**
11/12/2004 12:45 PM

To: Mike R Johnson/Stores/FM/KrogerCo
cc: James Breland/Stores/FM/KrogerCo
Subject: Re: Meeting

Mike,

James arrives at 10:00 on Saturday, he is off on Friday

Thanks,

Ryan S. Krieger
Loss Prevention Manager
Anchorage East Fred Meyer (18)

-----Mike R Johnson/Stores/FM/KrogerCo wrote: -----

To: James Breland/Stores/FM/KrogerCo@KrogerCo, Ryan S Krieger/Stores/FM/KrogerCo@KrogerCo
From: Mike R Johnson/Stores/FM/KrogerCo
Date: 11/11/2004 06:30PM
Subject: Meeting

I would like to set up a time for us three to talk on Friday or Saturday. Ryan please follow with James on a good time for all of us. I am available both days.

Thanks

Mike Johnson
018-Anchorage East
Store Director

Exhibit _A_ Page _58_ of _64_

Plaintiff #0021

**Mike R Johnson**
11/13/2004 06:43 PM

To: James Breland/Stores/FM/KrogerCo@KrogerCo
cc:
Subject: RE: Follow up.

Hello James-  I have contacted Jennifer Carlson via email regarding the need for a diversity training class. I have also contacted Mike Blewett via phone asking his help to make certain that Bryan does attend a/another class when set up.  I have also sent a recap of our conversation to Kevin Ruoff and noted to him that the matter is now in his hands in regards to Bryan's discipline and/or development. At this time I no longer have any follow up tasks to complete, however should you need me to address any further issues or need me to address any concerns I will make myself available.

Mike Johnson
018-Anchorage East
Store Director

Exhibit _A_ Page _59_ of _64_



**Mike R Johnson**

11/13/2004 04:59 PM

To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo
cc:
Subject: RE: James Breland and Bryan Stewart incident.

Met with James and Ryan today regarding incident. I asked James if it was ok to have Ryan present.

I opened the conversation with we have an issue that is unresolved and needs to be addressed. This is a serious issue and I need to understand what I can do to help resolve this.

James denies talking more than once, I know specifically that I talked with James 2 times reagarding this incident. He also stated that we were suppose to get back together after our last conversation. I saw our last meeting as final. I did not schedule a follow up in my Palm. If we had discussed getting back together I would have scheduled it. Our first two meetings were unscheduled.

James repeatedly referred to Bryan as a racist. I asked him to focuss on the activity and not call names. James states that Bryan is a racist. James states that it is a behavior not an activity, we were saying the same thing however James wanted to impose his point of view and I let him.

James states that he feels Bryan was let off and the issue was swept under the rug. I reminded James of our conversation and we agreed that Bryan needed to improve. He did not want to see anything happen to Bryan he just wants to see him improve. This incident would be documented and kept in Bryans file and he would be required to complete diversity training. James was satisfied with that at the time. He agreed in our meeting and went on to challenge if they had been done.

James felt documentation of the incident was not filed in Bryans personall file. I assured him it was retained and is filed. Kevin Ruoff has this documentation.

James also was concerned that Bryan has not completed Diversity training. I told James I was unsure of this however this task is noted in Bryans performace appraissal and must be completed prior to his next review (Kevin I gave it to you it has a completion date, can you talk with Mike Blewitt about this.)

James does not like talking with me, he is argumentative and calculating. His agenda is unknown and he has not set clear expectations. I continued to ask him  what he wanted to se happen and could not get an answer. Our previous conversation concluded that James just wants to see him improve. James in our last meeting opted to continue to work here at AE and continue to work with Bryan. James also, at that time agreed to help Bryan with his language and understanding of working in a diverse workplace.  ( James deems himself as an expert in diversity)

James finally concluded that I could not help him and I am of no use to him.  This in part due to the fact that I no longer supervise Bryan.

**I told James that I would turn this over to you Kevin to supervise Bryans activity and development.**

James has not brought this issue up to me ever. James has never asked to discuss this issue with me or review any issue. It seems odd that when I last talked with him it was all ok and he wanted to work with Bryan to 8 months later wanting to see Bryan suspended. I told James it has been past 6 months, I cant suspend him for something that happened 8 months ago. He reminded me I am of no use and why is he talking with me then.

Exhibit __A__ Page _60_ of _64_

200092

I have asked Ryan to document this meeting as well to ensure my point of view is not one sided.

Mike Johnson
018-Anchorage East
Store Director



**Ryan S Krieger**
11-14-2004 05:12 PM

To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo, Mike R
Johnson/Stores/FM/KrogerCo@KrogerCo
cc: James Breland/Stores/FM/KrogerCo@KrogerCo
Subject: Meeting

Gentlemen,

Below is a witness statement completed by myself in regards to a meeting between AE/18 Store Director Mr Mike Johnson and AE/18 LPS Mr James Breland.

This meeting occurred at 1500Hrs on Saturday November 13th 2004. The following employees were in attendance: Director Mike Johnson, LPS James Breland, and LPM Ryan Krieger.

Mr Breland and Mr Krieger were invited into the Directors Office by Mr Johnson in order to discuss a solution for an open complaint which was generated by Mr Breland. The nature of this complaint was use of improper (derogatory and racially charged,) language by the former Store LPM (Bryan Stewart.) Mr Johnson first asked Mr Breland if he was comfortable with Mr Krieger acting as a witness. Mr Breland stated that this was fine.

Mr Johnson started by stating that he was unsure why Mr Breland was upset with how this incident was handled. Mr Johnson stated that he had involved Mr Breland in the investigation, and that he had personally met with Mr Breland twice to ensure that the matter was being handled to his satisfaction. At that time Mr Breland disagreed, stating that Mr Johnson had spoken to him 1 time, for a period of 1 hour. Mr Breland stated that he felt that his complaint was not dealt with in a fair and unbiased manner due to the fact that a personal relationship existed between Mr Johnson and Mr Stewart. Mr Johnson asked Mr Breland what action he was looking for in this matter. Mr Breland inquired if any action had been taken at all, to which Mr Johnson replied that all facets of this incident had been documented and placed into Mr Stewarts file. Mr Johnson also stated that Mr Stewart will also be required to take a Diversity training class prior to his next performance review.

Mr Johnson then asked Mr Breland what action should have been taken in this situation, Mr Breland stated that it was not his job to assign a punishment to his supervisor, however, he felt something should have been done. Mr Johnson again stated what actions had been taken. At which time Mr Breland stated that he knew for a fact that Mr Stewart had not taken any Diversity training. Mr Johnson replied that the class had to be scheduled and that he did not play a role in that matter anymore as Mr Stewart no longer worked a this location. Mr Johnson stated that Mr Stewart had been re-located in part to satisfy this complaint, and that he felt that Mr Stewarts' behavior was a product of stress brought on by his work environment. Mr Breland then stated that he knew that Mr Stewart was continuing to make racial slurs even though he had been moved to a less stressful location. Mr Breland felt that more action should have been taken in this incident since the punishment was not working. Mr Breland went on to state that at the very least Mr Stewart should have been suspended. Mr Johnson then stated that to much time had passed and that suspension was not possible at this point. Mr Breland said that there was no reason to be discussing the incident if no punishment could be metered out.

Mr Breland made a point that a supervisor should be held to higher standards then other employees, and that the standards for an LPM should to even higher. Mr Breland stated that having an LPM who is racist could be a problem for a store such as this. At that point Mr Johnson stopped Mr Breland and stated that it was not fair to be calling Mr Stewart names. Mr Breland stated that Mr Stewart did exhibit racist behavior while working around Mr Breland. Mr Johnson then made the statement that he did not believe Mr Stewart to be a racist person. Mr Johnson stated that Mr Stewart simply took part in racist activities. At that point Mr Breland stated that he felt that he needed to speak with Kevin Ruoff regarding this incident due to the fact he didn't feel Mr Johnson could help him. Mr Johnson stated that he would pass this information on to Mr Ruoff.

This marked the ending of the meeting. Total time was approximately 26 minutes.

Respectfully submitted,



EXHIBIT

Exhibit _A_ Page _62_ of _64_

Plaintiff #0023

Ryan S. Krieger
Loss Prevention Manager
Anchorage East Fred Meyer (18)

Exhibit __A__ Page _63_ of _64_

Plaintiff #0024

## RLPM NON-ARREST APPREHENSION REVIEW FORM

**Name:** _James Breland_

**Location:** _0001 8/ AE_    **Date of Incident:** _02/14/05_

**LPIS Incident #:** _0959479033_

**Follow-up**

**Was LPS/LPM interviewed regarding the Non-Arrest?** (Y)/ N.

**Summary:**

_Mr. Breland stopped A/F Jennifer Ems for lipstick no ruby found. Ms. Ems released. LPS Breland wrote LPIS 0959479033 harassment report - Failed to report Non Arrest_

**Findings:**

_Error in Judgement - Failure to Report Non - Arrest_

**List All Prior Non-Arrests:**

1. _4-9-03 - Error in Judgement_
2.
3.

**List all Prior Recorded Discipline Write-ups:**

_4-9-03 - Write up - suspension Non - Arrest_
_7-24-02 - improper conduct w/ customer_

**Action Taken for This Non-Arrest Apprehension:**

_Termination of Employment_

**Signature of RLPM:** _[signature]_

**Signature of LPM/LPS:** _____

**Date:** _2/16/05_



EXHIBIT

Exhibit _A_ Page _64_ of _64_

200378