```
04/27/04  20:26        User F888508                    Printer AAC9
                NOTE 03/22/04 19:25:33 F888508
         To: Kevin Ruoff                              F149885  - FMHOST
       From: James Breland                            F888508  - FMHOST
       Date: 03/22/04
    Subject: Situation
```
------------------------------------------------------------------------

Kevin

   I just wanted to say, during your last visit to Anchorage Ak, I appreciate
you taking a few minutes out of your busy schedule to speak with me.  I did
not really get into any specifics concerning the situation between myself
and LPM Stewart because basically I figured, I'd just transfer and not really
for a lack of a better term have to deal with Mr. Stewart.

I'll do a quick synopsis of my employment with Fred Meyer.  I was hired as a
RTS by LPM Becker on 1/4/2002.  I remained at Store 656/JO shortly before grand
opening during which time LPM Kreiger hired me as a part-time LPS for the Dia-
mond location.  I remained at the Diamond location for several months and
worked every Sunday's at Store #18/AE as they where short handed.  I continued
to work at the Diamond location until then RLPM Hubner notified myself along
with LPM Kreiger that they would be doing away with the part-time position and
be moving the hours along with me (LPS Breland) to the Muldoon/Debarr location.
So basically I had no choice in the matter as the position at Diamond was given
to the Muldoon/Debarr location Store #18.

Hence the working relationship of myself and LPM Stewart.  Before coming to the
Muldoon/Debarr location, I was told by other LPM's as well as LPS's that Mr.
Stewart was a racist.  I decided to give myself a opportunity to get to know
Mr. Stewart and not base my opinion off of what other's had to say concerning
LPM Stewart.  So here I stand as a minority with my views and opinions of work-
ing for and with LPM Stewart.

I'll start with education and knowledge is the key to anything, ignorance is a
disease that can be cured by both education and knowledge.  LPM Stewart lacks
both education and knowledge concerning diversity, equal opportunity, equal
rights and discrimination.  During the span of working for and with LPM Stewart
I find that he's a decent person with some issue's concerning race. LPM Stewart
has not directly called or address me in a derogatory manner concerning race
but I personally have heard him make on quite a few occassions derogatory/in
appropriate comments concerning onces race with in the work place.

I also will say that, I feel that LPM Stewart tends to take what I say more
personal because, I am a minority.  I really feel that LPM Stewart tries
and he's genuinely a decent person that I do get a long with despite the fact
he's made derogatory/inappropriate comments around me.  I'll clairfy around
me,  LPM Stewart I believe nows what he's doing is wrong and by that I mean
everytime he's made a derogatory/inappropriate remark Mr. Stewart assumed that
I was on the floor at that time or he had no knowledge of me being in the
office during the time he made the derogatory/inappropriate remark.

I also would like to say, that not all people feel the way LPM Stewart may
feel about certain races.  With that being said, I had a co-worker transfer
to another store because of LPM Stewart what I deem to be a poor attitude



Plaintiff #0015

```
04/27/04   20:26        User F888508                    Printer AAC9
                    NOTE 03/22/04 21:10:05 F888508
          To: Kevin Ruoff                               F149885  - FMHOST
        From: James Breland                             F888508  - FMHOST
        Date: 03/22/04
     Subject: Situation
```
-----------------------------------------------------------------------

my co-worker Tony Bonini who now works at Store 71/DA left because of the
derogatory/inappropriate remarks made by LPM Stewart on a daily basis.  So I
like to say that all though Mr. Bonini is the same race as LPM Stewart he
did not have the same views.  I feel LPM Stewart imposes his views and makes
derogatory/inappropriate remarks in the presents of those of his same race
thinking that they may feel the same way he does.   Mr. Bonini is an example
that not those of the same race feel or have the same views as Mr. Stewart.

I've thought about this situation for sometime, at first I wanted to transfer
but why?  I'm not the one with the problem.Yes, the derogatory/inappropriate
remarks offend me but I shouldn't have to inconvience myself because LPM
Stewart creates a hostile work enviornment for employees with his racial views
and derogatory/inappropriate remarks.  I firemly believe that LPS Bonini would
still be working at Store 18/AE if it was for this type of attitude displayed
by LPM Stewart.  LPM Stewart made it very uncomfortable for LPS Bonini to
work in that type of environment. I also believe that LPM Becker may have
address this problem in the pass but I'm not sure.

I'll close with this, Mr. Ruoff.  Mr. Stewart has a disease and the type
of disease that Mr. Stewart has for the type of job that we do can be very
detrimental to those who work for him and around him.  As an LPM you are
responsible for training, directing, and molding LPS's.  A new LPS can be
very impressionable and with this job a person's view can be obscured when
being trained, directed or molded by someone with the disease that LPM Stewar
has. In our job we deal with a variety of people from different nationalitie
religion, race etc....   This is where LPM Stewart view can be detrimental t
the crew it self which it has already effected, the perception of the store
the people that work with in it.  The customers that shop at the store etc..
It has a domino effect especially concerning what we do as security. .So I
shouldn't have to be transferred or inconvenience myself in order to have a
pleasant work environment.



                         Sincerely


                         James Breland  LPS AE/18

```
03/24/04  15:43          User F149885                  Printer ABVC
                   REPLY 03/23/04 22:37:22 F888508
              To: Kevin Ruoff                          F149885  - FMHOST
            From: James Breland                        F888508  - FMHOST
            Date: 03/23/04
         Subject: Situation
       Reference: Your note of 03/23/04 07:58 attached below
```
-----------------------------------------------------------------------

Kevin

   I apologize for all the misspell words and the fact I didn't discuss this
long standing situation.  I was in between the thought of should I say
something or not. I kind of felt like LPS Bonini, If I transfer then I would
not have to deal with the derogatory/inappropriate remarks any longer but then
said to myself that, this wouldn't be right.  It wouldn't be fair to those
new LPS's coming after my transfer into a situation that was not corrected be-
cause no one said anything.
So I decided to say something but your right I probably should have brought the
topic up during your last visit the night we talked.  Well to say the least
I've only heard the derogatory/inappropriate remarks on six occassions but
I'm sure if you decide to talk with LPS Bonini and LPM Becker they will
express to you that LPM Stewart uses those remarks along with other's on a
daily basis when those of his same race and gender are around. Again I'll say
I think LPM Stewart is a decent person and we do generally get a long pretty
good but I think a little education on these topics will go a long way and
hopefully he'll apply what he's learned and have a better understanding of
diversity, equal rights, tolerance, discrimination etc...   I can't speak for
everyone but my feeling is that those who have worked for or with LPM Stewart
figured it was just easy to let it go because that's just how he (LPM Stewart)
is and didn't feel like getting into a confrontation, Kevin I think educating
LPM Stewart is the key.


                                   Thanks jb

EXHIBIT
21
Breland

----------------------------- ATTACHED NOTE -------------------

```
              To: James Breland                        F888508  - FMHOST
            From: Kevin Ruoff                          F149885  - FMHOST
            Date: 03/23/04
         Subject: Situation
       Reference: Your note of 03/22/04 21:10 attached below
```
-----------------------------------------------------------------------

James

Thank you for your comments in this note.  This is the first complaint that
I have received regarding Mr. Stewart and any comments that he has made or
with regards to his attitude. I wish you had discussed this with me in person
last week when I sat down with you to discuss your feelings about working at
AE and with Mr. Stewart.

I will follow up on your note, and will work towards changing the environment
of the LP department at AE.  I would appreciate you keeping me aware of any

further issues or comments.

I further want you to know that I have no plans to transfer you out of AE, but
will work with you on any request you may present to transfer. As you are
aware, there is a lateral transfer to DA available if you are interested.

Again, please keep me appraised of any issues or problems at AE and/or with
Mr. Stewart.

Kevin

------------------------------- ATTACHED NOTE -------------------------------

          To: Kevin Ruoff                                 F149885  - FMHOST
          From: James Breland                             F888508  - FMHOST
          Date: 03/22/04
          Subject: Situation
------------------------------------------------------------------------------

my co-worker Tony Bonini who now works at Store 71/DA left because of the
derogatory/inappropriate remarks made by LPM Stewart on a daily basis.  So I
like to say that all though Mr. Bonini is the same race as LPM Stewart he
did not have the same views.  I feel LPM Stewart imposes his views and makes
derogatory/inapproapriate remarks in the presents of those of his same race
thinking that they may feel the same way he does.  Mr. Bonini is an example
that not those of the same race feel or have the same views as Mr. Stewart.

I've thought about this situation for sometime, at first I wanted to transfer
but why?  I'm not the one with the problem.Yes, the derogatory/inappropriate
remarks offend me but I shouldn't have to inconvience myself because LPM
Stewart creates a hostile work enviornment for employees with his racial views
and derogatory/inappropriate remarks.  I firemly believe that LPS Bonini would
still be working at Store 18/AE if it was for this type of attitude displayed
by LPM Stewart.  LPM Stewart made it very uncomfortable for LPS Bonini to
work in that type of environment. I also believe that LPM Becker may have
address this problem in the pass but I'm not sure.

I'll close with this, I like LPM Stewart he's a decent person I think he means
well.  Mr. Stewart and I get a long pretty good despite what I've just
express to you in this OV Mr. Ruoff.   Mr. Stewart has a disease and the type
of disease that Mr. Stewart has for the type of job that we do can be very
detrimental to those who work for him and around him.  As an LPM you are
responsible for training, directing, and molding LPS's.  A new LPS can be
very impressionable and with this job a person's view can be obscured when
being trained, directed or molded by someone with the disease that LPM Stewart
has. In our job we deal with a variety of people from different nationalities,
religion, race etc....   This is where LPM Stewart view can be detrimental to
the crew it self which it has already effected, the perception of the store and
the people that work with in it.  The customers that shop at the store etc...
It has a domino effect especially concerning what we do as security.  So I
shouldn't have to be transferred or inconvenience myself in order to have a
pleasant work environment.

I'll say again, I like Mr. Stewart and he's not a bad person to work for and we

actually get a long pretty good depite all the remarks I've heard.  LPM Stewart
has a disease concerning race but I think knowledge is power and ignorance can
be cured, education is the key to success and the will to succeed can only
make LPM Stewart a better person.

                        Sincerely

                        James Breland  LPS AE/18

```
03/23/04  10:03        User F149885                    Printer AAUM
               REPLY 03/23/04 09:59:52 F149885
         To: Mike Johnson                          F113022   - FMHOST
         cc: Jennifer Carlson                      JC75514   - KROGERCO
       From: Kevin Ruoff                           F149885   - FMHOST
       Date: 03/23/04
    Subject: Situation
  Reference: Your note of 03/23/04 09:36 attached below
```
--------------------------------------------------------------------------------

Mike

Understand and agree.

I had heard that James was upset and wanted to move.  I talked to him about
that on Thursday the 18th, and told him that DA was going to have a PT position
open and he was free to apply, but that I would not just move him into that
position.  During this conversation I also discussed with him the totally
unprofessional note that he had left for Bryan a few days prior (have Bryan
show you this if he has not already).  I explained to James that it was OK to
have an opinion on something and to express it, but that the manner he chose
was unprofessional and unacceptable.

At no time during that conversation did he relate any issues as to racism.

Thanks for your follow up on this.

Kevin


------------------------------- ATTACHED NOTE ----------------------------------

```
         To: Kevin Ruoff                           F149885   - FMHOST
         cc: Jennifer Carlson                      JC75514   - KROGERCO
       From: Mike Johnson                          F113022   - FMHOST
       Date: 03/23/04
    Subject: Situation
  Reference: Your note of 03/23/04 08:05 attached below
```
--------------------------------------------------------------------------------
Bryan-  Has communicated the increasing tension between James and Bryan. Bryan
made me aware of this issue in November and told me of the issue.

It appears as though James is trying to get moved to either AN or DA. I cannot
remember which.  He has someone he communicates with at one of these stores
that shares his views of Bryan.

I will talk with you before I meet with James.

Overall Bryan can be offensive. You and I are both aware of his style and both
(I feel) are working on this.   Bryan has not displayed any racist tendencies.
 When Bryan has delt with issues pertaining to racism/diversity he has handeled
them remarkably well, in my opinion.

Mike
This does not serve as the extent of my investigation.

EXHIBIT
22
Breland

200083

From: FRED MEYER ZONE 4           425 672 5256           04/14/2005 10:38 #575 P.011

```
NOTE --------------------------------
```

```
          To: Mike Johnson                        F113022  - FMHOST
          cc: Jennifer Carlson                    JC75514  - KROGERCO
        From: Kevin Ruoff                          F149885  - FMHOST
        Date: 03/23/04
     Subject: Situation
   Reference: Note from James Breland (F888508 - FMHOST) attached below
-------------------------------------------------------------------------
```

Mike

I sent you another note, with same subject.  This appears to be the first
part of the complaint, the other is the second.

Kevin

```
------------------------------ ATTACHED NOTE -------------------------------
```

```
          To: Kevin Ruoff                          F149885  - FMHOST
        From: James Breland                        F888508  - FMHOST
        Date: 03/22/04
     Subject: Situation
-------------------------------------------------------------------------
```

Kevin

   I just wanted to say, during your last visit to Anchorage Ak, I appreciate
you taking a few minutes out of your busy schedule to speak with me.  I did
not really get into any specifics concerning the situation between myself
and LPM Stewart because basically I figured, I'd just transfer and not really
for a lack of a better term have to deal with Mr. Stewart.

I'll do a quick synopsis of my employment with Fred Meyer.  I was hired as a
RTS by LPM Becker on 1/4/2002.  I remained at Store 656/JO shortly before grand
opening during which time LPM Kreiger hired me as a part-time LPS for the Dia-
mond location.  I remained at the Diamond location for several months and
worked every Sunday's at Store #18/AE as they where short handed.  I continued
to work at the Diamond location until then RLPM Hubner notified myself along
with LPM Kreiger that they would be doing away with the part-time position and
be moving the hours along with me (LPS Breland) to the Muldoon/Debarr location.
So basically I had no choice in the matter as the position at Diamond was given
to the Muldoon/Debarr location Store #18.

Hence the working relationship of myself and LPM Stewart.  Before coming to the
Muldoon/Debarr location, I was told by other LPM's as well as LPS's that Mr.
Stewart was a racist.  I decided to give myself a opportunity to get to know
Mr. Stewart and not base my opinion off of what other's had to say concerning
LPM Stewart.  So here I stand as a minority with my views and opinions of work-
ing for and with LPM Stewart.

I'll start with education and knowledge is the key to anything, ignorance is a
disease that can be cured by both education and knowledge.  LPM Stewart lacks

200084

both education and knowledge concerning diversity, equal opportunity, equal rights and discrimination. During the span of working for and with LPM Stewart I find that he's a decent person with some issue's concerning race. LPM Stewart has not directly called or address me in a derogatory manner concerning race but I personally have heard him make on quite a few occassions derogatory/in appropriate comments concerning onces race with in the work place.

I also will say that, I feel that LPM Stewart tends to take what I say more personal because, I am a minority.  I really feel that LPM Stewart tries and he's genuinely a decent person that I do get a long with despite the fact he's made derogatory/inappropriate comments around me.  I'll clairfy around me,  LPM Stewart I believe nows what he's doing is wrong and by that I mean everytime he's made a derogatory/inappropriate remark Mr. Stewart assumed that I was on the floor at that time or he had no knowledge of me being in the office during the time he made the derogatory/inappropriate remark.

I also would like to say, that not all people feel the way LPM Stewart may feel about certain races.  With that being said, I had a co-worker transfer to another store because of LPM Stewart what I deem to be a poor attitude

James Breland

10/30/2004 02:06 PM

To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo, Scott
Bringhurst/OPS/FM/KrogerCo@KrogerCo
cc: Ryan S Krieger/Stores/FM/KrogerCo@KrogerCo
Subject: COMPLAINT FOLLOW UP

To Whom It May Concern:

Mr. Ruoff I'm following up on a complaint/issue that was office vision to you 6 months ago
concerning Mr. Bryan Stewart. In April 2004 a complaint of Mr. Stewart making racial slurs and
inappropriate racial comments in the work environment was sent to you via office vision. At the
time the complaint was filed you informed me you would looked into the situation and decided
you would let this complaint be taken care of at the store level. The complaint was then
forwarded from you to the Store Director Mike Johnson who in turn forwards the complaint to
Mr. Stewart.

Mr. Stewart after reading the complaint called me at my day job to apologize for making the
racial slurs and inappropriate racial comments at which time he divulged that he and the Store
Director talked. I then came to Fred Meyer for work as schedule and was invited to the Store
Director office by Mike Johnson. Once in the office Mr. Johnson stated he had sent the
complaint to inform Mr. Stewart of the situation and that he also talked with Mr. Stewart who
admitted to making the racial slurs and inappropriate racial comments. Mike Johnson and myself
discussed the situation concerning Mr. Stewart that I thought to be positive. Mr. Johnson also
stated he would follow up with me about the complaint and the preventative measure to help
with Mr. Stewart.

After 6 months nothing has happened with the complaint and it seems as if everyone has swept
the incident under the carpet. I believe nothing has happen with this complaint because there is a
serious conflict of interest involved. The Store Director has knowledge of the complaint as well
as verbal admittance from Mr. Stewart stating he made these racial slurs and comments. It is in
my observation during the months after the complaint and the months before the August 6, 2004
transfer of Mr. Stewart from store #18 to store #71 that Mr. Johnson had no intention on pursing
the complaint involving the racial slurs and comments from Mr. Stewart.

Once Mr. Johnson became Store Director I observed what I deem to be an inappropriate
relationship between the Store Director and the Loss Prevention Manager. Mr. Johnson and Mr.
Stewart befriended one another and would hangout on occasions go house hunting or fishing
which in turn distorted Mr. Johnson's ability to be impartial concerning this complaint, which is
a huge disservice. Also between the time of the complaint and Mr. Stewart transfer I observed
several other injustices, during the remodel Mr. Stewart would silicate the help of the RTS but on
every occasion would only ask the same two males which happen to be minorities (Hispanic and
Samoan) to paint, move, and clean the LP office among other things. It's very disturbing as this
could be viewed as institutional discrimination as he never once ask a non-minority to do these
task. Also both these individuals showed interested in the open unbudgeted position that was
never posted Mr. Stewart never once offered or asked the minority workers to apply for the
position but told a non-minority RTS to apply which the individual was offered and accepted the

 EXHIBIT

job.

I find all these actions very disturbing and feel that an independent agency should look into my complaint among other issues since the Store Director could not be an impartial party and conduct an investigation to take the appropriate action necessary.  In Security/Loss Prevention especially a management position an individual with these tendencies and personal views on other races can do a lot of harm than good and when an egregious act like this done especially in a sensitive position as a Loss Prevention Manager it is very important for someone to be proactive in making sure that this type of behavior is not tolerated and some type of punishment is incorporated.  This issue will be forwarded to an impartial party or agency to investigate since the issue at store level was not pursued and resolved in an appropriate manner.

James Breland
Loss Prevention

Fred Meyer

Store #18

Plaintiff #0018

 **Kevin Ruoff**

11/03/2004 08:35 AM

To: James Breland/Stores/FM/KrogerCo@ KrogerCo
cc: Ryan S Krieger/Stores/FM/KrogerCo
Subject: Please call me

James

Please call me at 206-409-7421 when you get in today.

thanks,

Kevin

Kevin R. Ruoff
Zone 4 Regional Loss Prevention Supervisor
425-582-4046
206-982-6009 (Pager)

Plaintiff #0019

Mike R Johnson

11/11/2004 06:30 PM

To: James Breland/Stores/FM/KrogerCo@KrogerCo, Ryan S
Krieger/Stores/FM/KrogerCo@KrogerCo

cc:

Subject: Meeting

I would like to set up a time for us three to talk on Friday or Saturday. Ryan please follow with James on a good time for all of us. I am available both days.

Thanks

Mike Johnson
018-Anchorage East
Store Director

Ryan S Krieger
11/12/2004 12:45 PM

To:  Mike R Johnson/Stores/FM/KrogerCo
cc:  James Breland/Stores/FM/KrogerCo
Subject:  Re: Meeting

Mike,

James arrives at 10:00 on Saturday, he is off on Friday

Thanks,

Ryan S. Krieger
Loss Prevention Manager
Anchorage East Fred Meyer (18)

-----Mike R Johnson/Stores/FM/KrogerCo wrote: -----

To: James Breland/Stores/FM/KrogerCo@KrogerCo, Ryan S Krieger/Stores/FM/KrogerCo@KrogerCo
From: Mike R Johnson/Stores/FM/KrogerCo
Date: 11/11/2004 06:30PM
Subject: Meeting

I would like to set up a time for us three to talk on Friday or Saturday. Ryan please follow with James on a good time for all of us. I am available both days.

Thanks

Mike Johnson
018-Anchorage East
Store Director

Plaintiff #0021

Mike R Johnson                 To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo
11/13/2004 04:59 PM            cc:
                               Subject: RE: James Breland and Bryan Stewart incident.

Met with James and Ryan today regarding incident. I asked James if it was ok to have Ryan present.

I opened the conversation with we have an issue that is unresolved and needs to be addressed. This is a serious issue and I need to understand what I can do to help resolve this.

James denies talking more than once, I know specifically that I talked with James 2 times reagarding this incident. He also stated that we were suppose to get back together after our last conversation. I saw our last meeting as final. I did not schedule a follow up in my Palm. If we had discussed getting back together I would have scheduled it. Our first two meetings were unscheduled.

James repeatedly referred to Bryan as a racist. I asked him to focuss on the activity and not call names. James states that Bryan is a racist. James states that it is a behavior not an activity, we were saying the same thing however James wanted to impose his point of view and I let him.

James states that he feels Bryan was let off and the issue was swept under the rug. I reminded James of our conversation and we agreed that Bryan needed to improve. He did not want to see anything happen to Bryan he just wants to see him improve. This incident would be documented and kept in Bryans file and he would be required to complete diversity training. James was satisfied with that at the time. He agreed in our meeting and went on to challenge if they had been done.

James felt documentation of the incident was not filed in Bryans personall file.   I assurred him it was retained and is filed.  Kevin Ruoff has this documentation.

James also was concerned that Bryan has not completed Diversity training. I told James I was unsure of this however this task is noted in Bryans performace appraisal and must be completed prior to his next review (Kevin I gave it to you it has a completion date, can you talk with Mike Blewitt about this.)

James does not like talking with me, he is argumentative and calculating. His agenda is unknown and he has not set clear expectations. I continued to ask him  what he wanted to se happen and could not get an answer. Our previous conversation concluded that James just wants to see him improve. James in our last meeting opted to continue to work here at AE and continue to work with Bryan. James also, at that time agreed to help Bryan with his language and understanding of working in a diverse workplace.  ( James deems himself as an expert in diversity)

James finally concluded that I could not help him and I am of no use to him.  This in part due to the fact that I no longer supervise Bryan.

I told James that I would turn this over to you Kevin to supervise Bryans activity and development.

James has not brought this issue up to me ever. James has never asked to discuss this issue with me or review any issue.  It seems odd that when I last talked with him it was all ok and he wanted to work with Bryan to 8 months later wanting to see Bryan suspended. I told James it has been past 6 months, I cant suspend him for something that happened 8 months ago. He reminded me I am of no use and why is he talking with me then.



200092

I have asked Ryan to document this meeting as well to ensure my point of view is not one sided.


Mike Johnson
018-Anchorage East
Store Director



Ryan S Krieger

11/14/2004 05:12 PM

To: Kevin Ruoff/OPS/FM/KrogerCo@KrogerCo, Mike R
Johnson/Stores/FM/KrogerCo@KrogerCo
cc: James Breland/Stores/FM/KrogerCo@KrogerCo
Subject: Meeting

Gentlemen,

Below is a witness statement completed by myself in regards to a meeting between AE/18 Store Director Mr Mike Johnson and AE/18 LPS Mr James Breland.

This meeting occurred at 1500Hrs on Saturday November 13th 2004. The following employees were in attendance: Director Mike Johnson, LPS James Breland, and LPM Ryan Krieger.

Mr Breland and Mr Krieger were invited into the Directors Office by Mr Johnson in order to discuss a solution for an open complaint which was generated by Mr Breland. The nature of this complaint was use of improper (derogatory and racially charged,) language by the former Store LPM (Bryan Stewart.) Mr Johnson first asked Mr Breland if he was comfortable with Mr Krieger acting as a witness. Mr Breland stated that this was fine.

Mr Johnson started by stating that he was unsure why Mr Breland was upset with how this incident was handled. Mr Johnson stated that he had involved Mr Breland in the investigation, and that he had personally met with Mr Breland twice to ensure that the matter was being handled to his satisfaction. At that time Mr Breland disagreed, stating that Mr Johnson had spoken to him 1 time, for a period of 1 hour. Mr Breland stated that he felt that his complaint was not dealt with in a fair and unbiased manner due to the fact that a personal relationship existed between Mr Johnson and Mr Stewart. Mr Johnson asked Mr Breland what action he was looking for in this matter. Mr Breland inquired if any action had been taken at all, to which Mr Johnson replied that all facets of this incident had been documented and placed into Mr Stewarts file. Mr Johnson also stated that Mr Stewart will also be required to take a Diversity training class prior to his next performance review.

Mr Johnson then asked Mr Breland what action should have been taken in this situation, Mr Breland stated that it was not his job to assign a punishment to his supervisor, however, he felt something should have been done. Mr Johnson again stated what actions had been taken. At which time Mr Breland stated that he knew for a fact that Mr Stewart had not taken any Diversity training. Mr Johnson replied that the class had to be scheduled and that he did not play a role in that matter anymore as Mr Stewart no longer worked a this location. Mr Johnson stated that Mr Stewart had been re-located in part to satisfy this complaint, and that he felt that Mr Stewarts' behavior was a product of stress brought on by his work environment. Mr Breland then stated that he knew that Mr Stewart was continuing to make racial slurs even though he had been moved to a less stressful location. Mr Breland felt that more action should have been taken in this incident since the punishment was not working. Mr Breland went on to state that at the very least Mr Stewart should have been suspended. Mr Johnson then stated that to much time had passed and that suspension was not possible at this point. Mr Breland said that there was no reason to be discussing the incident if no punishment could be metered out.

Mr Breland made a point that a supervisor should be held to higher standards then other employees, and that the standards for an LPM should be even higher. Mr Breland stated that having an LPM who is racist could be a problem for a store such as this. At that point Mr Johnson stopped Mr Breland and stated that it was not fair to be calling Mr Stewart names. Mr Breland stated that Mr Stewart did exhibit racist behavior while working around Mr Breland. Mr Johnson then made the statement that he did not believe Mr Stewart to be a racist person. Mr Johnson stated that Mr Stewart simply took part in racist activities. At that point Mr Breland stated that he felt that he needed to speak with Kevin Ruoff regarding this incident due to the fact he didn't feel Mr Johnson could help him. Mr Johnson stated that he would pass this information on to Mr Ruoff.

This marked the ending of the meeting. Total time was approximately 26 minutes.

Respectfully submitted,



EXHIBIT

Ryan S. Krieger
Loss Prevention Manager
Anchorage East Fred Meyer (18)

Plaintiff #0024

## RLPM NON-ARREST APPREHENSION REVIEW FORM

Name: _James Breland_

Location: _00018/HE_    Date of Incident: _02/14/05_

LPIS Incident #: _0959479033_

Follow-up

Was LPS/LPM interviewed regarding the Non-Arrest? (Y)/ N.

Summary:

Mr. Breland stopped A/F Jennifer Ems for
lipstick no sale found. Mrs. Ems released.
LPS Breland wrote LPIS 0959479033 harassment
report - Failed to report Non Arrest

Findings:

Error in Judgement - Failure to Report
Non - Arrest

List All Prior Non-Arrests:
1. 4-9-03 - Error in Judgement
2.
3.

List all Prior Recorded Discipline Write-ups:
4-9-03 - write up - suspension non-Arrest
7-24-02 - improper conduct w/ customer

Action Taken for This Non-Arrest Apprehension:
Termination of Employment

Signature of RLPM: _____

Signature of LPM/LPS: _____

Date: _2/16/05_



200378



<u>To Whom it May Concern</u>                                                      February 15, 2005


This is in reference to the facts of the Customer/Employee Harassment AKA Non Arrest Apprehension on February 14, 2005 at approximately 1945 hrs I James Breland Loss Prevention observed two female adults in store I notice from a few prior losses.  After observing both females for a while one young lady saw LP watching and became very irritated and made a few profanity laced comments towards myself along with an obscene finger gesture. I then left the Apparel section and after awhile regain observation of the young ladies in the cosmetic section.  I observe the one young lady who made the comments and the finger gesture select several cosmetic items at which time she conceal the cosmetic in her hand under the jacket she had drape over the hand and forearm.  A call was then place to fellow LP Kodiak informing him of the situation via my personal cell phone to his personal cell phone as one store phone 2614 could not be located.

   While communicating via Cell phone  reception was not good but I informed LP Kodiak that I would make contact with the young lady that I believe may have taken the cosmetics. it was also communicated that "I wasn't sure but I believe she has the merchandise, I need you there as my witness."  The young ladies exited the location via exit "B" once outside on the side walk  LP Kodiak had already stopped and identified himself as LP to the young lady. As I was walking up he invited the young lady back to the office at this time.  The young lady turned notice me from the earlier incident in the store and became angry and was adamant about proving both LP Kodiak and myself wrong and insisted on going back to the office after LP Kodiak had stopped, identified himself and invited her back to the office. At this time I told the young lady  that's ok no need to go with us to the office she was shouting no I want to show you guys I didn't take anything let's go back in the store I'll show you. At this time I continued to inform the young lady no need to go back to the office or in the store, she continued to follow shouting I did not take anything I will prove it to you.  At this time she continued to follow and was insistent on proving that she did not remove any merchandise. I proceeded back to the office to try and remove myself from the situation but she continued to follow, as I swiped in the employee entrance she followed behind only after LP Kodiak invited her to the office.  The young lady was let into the office only after her constant following, badgering and invitation.  Once in the office the young lady removed her jacket, pull out the pockets on her pants, slammed the purse on the desk at which time she unzip & said search see I don't have anything,  a apology was given and she then exited the location.

   These are the facts in the case and I'm sure the video will substantiate these facts. As for my termination. I believe I was wrongfully terminated based on these facts because I did NOT make any contact with the customer. LPS Kodiak made full contact with the customer by identifying himself verbally and visually by badge stating "Excuse me we need to talk to you about the cosmetics you have, can you please come back in the store" Once contact was made by LPS Kodiak it was his responsibility according to Policy to take care of the situation. I believe a memo was sent out in the pass the person observing all 5 elements will be the person who makes the approach and apprehension of the individual and that there will be NO one person observing selection and the other person seeing concealment. So in this situation the approach and apprehension was not his to make being he <u>DID NOT</u> observe any of the <u>5 elements</u>.  My exact words to LPS Kodiak "I will make contact with the young lady I believe to have

                                                                      Plaintiff #0025

taken the cosmetics, I wasn't sure but I believe she has the merchandise" just a few minutes before they walked out of the exit I then stated "their leaving" at this time communication between myself and LPS Kodiak was terminated due to him hanging up his cell phone. LPS Kodiak exited and made contact of his own free will, he was NOT directed by me or any qualified floor training person within Loss Prevention to make the apprehension. I had doubts about the concealment and therefore intended to let the young lady leave without contact from myself. Further more I was NOT informed or told by anyone of importance with in the Loss Prevention Chain of Command such as LPM Krieger or RLPM Ruoff that he Mr. Paul Kodiak was in training and unable to make apprehension and while working he would be under my direct supervision for training and any mistakes he made would be my direct responsibility. I believe Jimmy Brown of Northern Lights and Frederick Becker of the Abbott store are the only qualified floor training persons in the Alaska market. To hold ME responsible for an incident such as this when NO ONE communicated to LPM Krieger, LPS Kodiak or myself that LPS Kodiak is in training and WILL NOT make any apprehensions is egregious. As for making the proper documentation with in LPIS an incident was recorded concerning my involvement and no detail information was listed because of the fact LPS Kodiak was the individual that made contact and invited the young lady to the office. According the the POLICY manual located in the LP office of Store #18 the individual involved has 24 hrs to report the incident to the LPM and RLPM being that LPS Kodiak made the contact and invitation to the young lady was his responsibility to report the incident within the hour. The following day the incident was going to be discuss once I arrived at work with LPM Krieger before I was immediately terminated. If that's not the policy then the Loss Prevention manual located in the office of store #18 has not been updated. Upon my arrival to work on 2/15/2005 I had every intention to discuss the situation with LPM Krieger as I felt I was not responsible for the incident.

I know all the listed above facts was not considered that should have been considered. The immediate termination without consideration of the facts is egregious at which time I believe a alternative punishment pending termination should have been granted upon review of all facts. I know of several former co workers who violated policies but was given alternative punishment pending termination, ie... Bonn Kraker who violated several policies on a consistent basis was given alternative punishment pending termination upon review of all facts. The incidents involved the Non Arrest Apprehension of the two young ladies of African American back ground that was cuffed and taken to the Loss Prevention office because LPS Kracker got upset he was burnt by them while on the floor. The other incidents and complaints by customers reporting the choke hold being applied during several apprehension involving the former LPS Kracker which was a violation of policy. Also the incident involving the currently employed LPS Ellingwood, LPS Burgess and former LPS Holt to which a customer was approached and the LPS although not on the clock presented his badge basically identifying himself as security was reported a few days to a week later. That incident was a clear violation of policy but all facts was reviewed a alternative punishment was given before termination was even considered.

I wouldn't say my judgment isn't without mistake but I do practice the motto of "When in Doubt let it Out" and on that night I was in doubt and wasn't sure so that's why I didn't approach the young lady and lagged behind never giving thought to LPS Kodiak making the apprehension, my doubt was commicated to LPS Kodiak during our communication. I was employed with Fred Meyer for 3 yrs from 1/4/2002 to 2/15/2005 just recently given accolades for a job well done in the Loss Prevention for 2004. The top LPS in the Z4 Region for apprehension 2 yrs straight, I've never been in trouble with the company for anything. I accumulated the following stats for these years (2002) 88 apprehensions with a $65 dollar average. (2003) 174 apprehensions with a $70 dollar average 1 vender, 1 employee. (2004) 104 apprehensions with a $224 dollar average 1 employee. So with the total of 366 apprehension with in the 3 yrs I've only had one NON ARREST APPREHENSION which happen in May of 2003.

Plaintiff #0026

I can not say why or what LPS Kodiak thought process was concerning this incident but it wasn't his stop to make but he made the approach and detainment without any elements or directive to do so.  The facts are LPS Kodiak initiated contact with the young lady of his own free will at which time he detained and invited her back to the office only after I arrived on the scene.  I did NOT tell LPS Kodiak to apprehend the young lady, also it was not communicated to LPM Krieger, LPS Kodiak or myself LPS Breland that LPS Kodiak is in training and is NOT allowed to make apprehensions. This much need to know detail was not communicated until after the incident and I truly believe if this bit of information would have been communicated to LPM Krieger, LPS Kodiak and myself this incident may have not happened at all. The impression was that LPS Kodiak was free to make apprehension and decision based on his judgments as he did go through Phase I & II training and no one with in the Anchorage East Loss Prevention was told any different.  At this point Mr. Ruoff and Mr. Bringhurst I'm asking that you be fair in your judgment and consider all the facts listed in this statement along with what is on the video.  I do believe after considering the facts I would trust that you gentlemen will be fair in your assessment and make the right determination considering the facts given in the statements and video.   Thanks for your time and consideration

James Breland



# LOSS PREVENTION POLICY MANUAL

Topic:        Non-Arrest and Non-Policy Stops, Disciplinary Guidelines

Fred Meyer views direct and indirect allegations or implications of theft by any personnel as a most serious and potentially damaging act. There is a very specific procedure to be followed by Loss Prevention personnel when effecting apprehension of suspects. That procedure is to be followed.

Appreciating that we live in an imperfect world, on occasion, a customer will be approached who will not have the merchandise where the Loss Prevention Person believes it is located or the customer has paid for the merchandise. In either instance, we courteously apologize to the customer for their inconvenience, patience and any embarrassment, and permit them to continue on their way. This non-arrest apprehension or approach is immediately reported both verbally to your Supervisor and in written statement form as per instruction on Incident Reports.

*Non-arrest apprehensions or approach to a customer is the result of either an "error in judgment" or an "error in fact."*

Error in Judgment :        This type of non-arrest apprehension results from a failure to follow the Loss Prevention Apprehension procedures as outlined in Section #400 of this manual. This includes the apprehension of accomplices, the directing of a non-Loss Prevention employee to approach a Customer outside the store with a request for a receipt and/or proof of purchase, and the detention of a Customer, no matter how slight in duration, by a Loss Prevention employee to determine the ownership of property that does not result in an arrest or admission of theft.

This is the most serious non-arrest infraction and will usually result in serious disciplinary action up to and including termination of employment following examination of all facts surrounding the incident.

Error in Judgment – Disciplinary Guidelines – (Apparent Disregard for Corporate Loss Prevention Policy)

1st within 24 months:     Written warning including suspension of employment without pay (3 days for LPS / 7 days for LPM). Re-read section 400 of the LP Manual and document that they have read and understand the policies within. LPS/LPM will write a report to the RLPM relating the facts of the non-arrest, what went wrong, what should have occurred, and the liability they have put themselves and Fred Meyer in.

2nd within 24 months:     Termination of employment

EXHIBIT
33
Johnson
PENGAD 800-631-6989

<u>Error in Fact:</u>    This type of non-arrest or approach results from following the Loss Prevention Apprehension procedures, however due to circumstances that you were not aware of at the time of the apprehension, the merchandise was not recovered. In this instance, the procedures were followed; however it resulted in a non-arrest. (Some examples:   A customer was directed by an employee to do their own exchange or a customer had prepaid for merchandise and returned to the department to retrieve it).

When it has been determined that an Error in Fact has occurred, verbal counseling and progressive discipline, if necessary, will be administered according to the following guidelines:

<u>Error in Fact – Disciplinary Guidelines</u>:

| | |
|---|---|
| 1st within 12 months: | Verbal Warning |
| 2nd within 12 months: | Written Warning |
| 3rd within 12 months: | Suspension of employment for three days for LPS or First/Last/Final letter of warning for LPM. |
| 4th within 12 months: | Termination of employment. |

<u>Non-Policy Apprehensions:</u>    This type of apprehension or approach is the result of failing to follow ALL the Loss Prevention Department's apprehension procedures, but does in fact lead to the arrest and admission to theft of a shoplifter. In this instance, one or more elements as described in the Loss Prevention Manual were missing, but the suspect did have unpaid for merchandise and admits to the theft.

While this infraction is less serious than an "Error in Fact" or "Error in Judgment," we must remember that the ends do not justify the means. All non-policy arrests will be reviewed by the Regional Loss Prevention Manager to determine the judgment used prior to making the apprehension and will result in a verbal or written warning. Repeat incidents will result in progressively more severe disciplinary action (suspension and/or termination of employment).

<u>Review of Facts:</u>    The Regional Loss Prevention Manager will personally review the circumstances surrounding each non-arrest and non-policy apprehension, and the Loss Prevention person will be given an opportunity to explain, in their own words, all circumstances.

The Loss Prevention person may appeal the decision for disciplinary action to the Loss Prevention Director or Human Resource Department.

A.    The RLPM will follow up with each person making a non-arrest apprehension. This should be in person, but can be done over the phone in remote stores. RLPM will need to review any available video of the non-arrest apprehension. The Loss Prevention Manager will be involved in the



review process if the non-arrest was by a Loss Prevention subordinate within his/her location.

During this review process, the Loss Prevention employee will not be involved in any type of shoplift surveillance, including use of cameras to aid other Loss Prevention employees in the apprehension or detection of theft.

B.   All non-arrest stops and final disciplinary action will be discussed by the RLPMs on the next Regional Conference call (typically on Monday of each week). This will ensure that each region is reacting in a similar fashion to the disciplinary actions taken.

Loss Prevention Manager (if a subordinate was responsible for the non-arrest) will present the situation to the RLPMs and Corporate LP staff.

C.   RLPM is to complete the "RLPM NON-ARREST APPREHENSION REVIEW FORM". A copy of the form is to go into the employee's file with a copy to SXB.

The Store Director should be involved in the disciplinary process for any LPS or LPM. Follow up needs to occur within 7 days of the non-arrest stop.

<u>Disciplinary Action</u>:   As with all disciplinary action, each case needs to be reviewed on a case-by-case basis, and the action taken appropriate for the persons involved and the judgment used. Length of service, prior disciplinary action and overall judgment used needs to be taken into account. As always, termination of employment is always an option when the judgment of the individuals involved and their actions are so grievous and severe, that it places Fred Meyer at increased risk to civil liability.

The Loss Prevention person may appeal the decision for disciplinary action to the Loss Prevention Director or Human Resource Department.

Additionally, any of the following actions <u>will result in immediate termination of employment</u>:

A.   The Failure to report any non-arrest apprehension within 1 hour of its occurrence.

B.   Any non-arrest apprehension made before the Loss Prevention person has been released from Phase 2 training.

C.   Any gross disregard of Policy and or any grave lack of judgment that causes a non-arrest apprehension.

D.    Any continued or uncorrected lack of judgment / lack of fact which persists after re-training and education have been documented from previous incident.

## Reporting Requirements:

Verbally report all non-arrest apprehensions or approaches to your Regional Loss Manager immediately. Immediately is defined as the next step to be taken and without delay. There is no reason why this communication should be delayed. If your RLPM is not available, contact your Corporate Director of Loss Prevention.

All **non-arrest apprehensions** or approaches must be documented as described in section #800 of the Loss Prevention Manual within **24** hours of the incident.

All **non-policy apprehensions** must be brought to the attention of the Regional Loss Prevention Manager within twenty-four **(24)** hours by sending to them a copy of the arrest report form and a full statement.

The golden rule of shoplifting apprehension is:

<u>FOLLOW PROCEDURE. AND "IF IN DOUBT, LET IT OUT"</u>

## Acknowledgement of understanding:

I have read and understand the non-arrest and non-policy apprehension and disciplinary guidelines. I further understand the policies and procedures for making a shoplift apprehension within Fred Meyer as described in section #400 of the Loss Prevention Manual.

Printed Name _____    Date _____

Your Signature _____    Loc  _____

## LOSS PREVENTION POLICY MANUAL

<u>Topic:</u> Non-Arrest and Non-Policy Stops, Disciplinary Guidelines

Fred Meyer views direct and indirect allegations or implications of theft by any personnel as a most serious and potentially damaging act. There is a very specific procedure to be followed by Loss Prevention personnel when effecting apprehension of suspects. That procedure is to be followed.

Appreciating that we live in an imperfect world, on occasion, a customer will be approached who will not have the merchandise where the Loss Prevention Person believes it is located, or the customer has paid for the merchandise. In either instance, we courteously apologize to the customer for their inconvenience, patience and any embarrassment, and permit them to continue on their way. This non-arrest apprehension or approach is immediately reported both verbally to your Supervisor and in written statement form as per instruction on Incident Reports.

### Reporting Requirements:

Verbally report all non-arrest apprehensions or approaches to your Regional Loss Manager immediately. Immediately is defined as the next step to be taken and without delay. There is no reason why this communication should be delayed, if your RLPM is not available, contact your Regional Loss Prevention Specialist or Corporate Director of Loss Prevention.

All non-arrest apprehensions or approaches must be documented as described in section #800 of the Loss Prevention Manual within 24 hours of the incident.

All non-policy stop apprehensions must be brought to the attention of the Regional Loss Prevention Manager within twenty-four (24) hours by sending to them a copy of the arrest report form and a full statement.

*Non-arrest apprehensions or approach to a customer is the result of either an "error in judgement" or an "error in fact."*

<u>Error in Judgement:</u> This type of non-arrest apprehension results from a failure to follow the Loss Prevention Apprehension procedures as outlined in Section #400 of this manual. This includes the apprehension of accomplices outside policy, the directing of a non-Loss Prevention employee to approach a Customer outside the store with a request for a receipt and/or proof of purchase, and the detention of a Customer, no matter how slight in duration, by a Loss Prevention employee, to determine the ownership of property that does not result in an arrest or admission of theft.

This is the most serious non-arrest infraction and will usually result in serious disciplinary action up to and including termination of employment following examination of all facts surrounding the incident.

(Sec.407  09/00)



**Error in Fact:**        This type of non-arrest or approach results from following the Loss Prevention Departments Apprehension Procedure, and the suspect does not have the merchandise in the original location of concealment. In this instance, the procedure was followed; however, the suspect moved the merchandise from one place of concealment to another, passed it off or dropped it without being detected.

While this infraction is less serious than an Error in Judgement, it will result in a written warning, and repeat incidents will result in progressively more sever disciplinary action (suspension and termination of employment).

**Non-Policy Apprehensions:** This type of apprehension or approach is the result of failing to follow ALL the Loss Prevention Departments apprehension procedures, but does in fact lead to the arrest and admission to theft of a shoplifter. In this instance, one or more elements as described in the Loss Prevention Manual were missing, but the suspect did have unpaid for merchandise and admits to the theft.

While this infraction is less serious than an "Error in Fact" or "Error in Judgement," we must remember that the ends do not justify the means. All non-policy arrests will be reviewed by the Regional Loss Prevention Manager to determine the judgement used prior to making the apprehension and will result in a verbal or written warning. Repeat incidents will result in progressively more severe disciplinary action (suspension and/or termination of employment).

**Review of Facts:**        The Regional Loss Prevention Manager will personally review the circumstances surrounding each non-arrest and non-policy apprehension, and the Loss Prevention person will be given an opportunity to explain, in their own words, all circumstances.

The Loss Prevention person may appeal the decision for disciplinary action to the Loss Prevention Director or Human Resource Department.

The golden rule of shoplifting apprehension is:

## FOLLOW PROCEDURE, AND "IF IN DOUBT, LET IT OUT"

Acknowledgement

I have read and understand the non-arrest and non-policy apprehension and disciplinary guidelines. I further understand the policies and procedures for making a shoplift apprehension within Fred Meyer as described in section #400 of the Loss Prevention Manual.

_____        _____

signed                                 date


_____        _____

name (print)                           location

(Sec.407  09/00)