LEE HOLEN LAW OFFICE
608 W. 4th Avenue, Suite 21
Anchorage, Alaska 99501
leeholen@gci.net
(907) 278-0298 ph
(907) 278-0247 fax

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| JAMES BRELAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. A05-169 CI (TMB) |
| | ) | |
| vs. | ) | |
| | ) | |
| FRED MEYER STORE, INC., | ) | **AFFIDAVIT OF** |
| | ) | **JAMES BRELAND** |
| Defendant. | ) | |

James Breland, being first duly sworn upon oath, deposes and says:

1) I provide this Affidavit in support of my Opposition to Defendant's Motion for Summary Judgment. The information I provide is of my own personal knowledge and true to the best of my information and belief. In providing this affidavit, I am in part responding to material in the Defendant's motion and the Ruoff Affidavit, in part to provide testimony I have not previously provided, and also to clarify any confusion resulting from the Defendant's allegations. To the best of my information and belief, nothing in my affidavit contradicts my deposition testimony.

2) I attended the depositions of Tony Bonini, Ryan Krieger, Fred Becker, Mike Johnson, and Paul Kodiak when they were taken on June 28 and 29, 2006. The depositions were not transcribed, but statements and admissions attributed to each witness in the Opposition Brief and in this Affidavit are true and correct to the best of my information and belief, based upon my own personal knowledge.

3) Bonini, Krieger and Kodiak all confirmed that Bryan Stewart, LPM, used racial epithets and slurs about African-Americans and other minorities at work. Tony Bonini told me, and also testified at his deposition, that he transferred from the Muldoon store in part because of Stewart's racist conduct.

4) On November 3, 2004, I called Kevin Ruoff pursuant to his email request that I do so. I told him again, in addition to my October 30 complaint, that the issue of Stewart's racism had not been taken care of due to the relationship between Stewart and Johnson, and also that Stewart continued making racist remarks both before and after his transfer from Muldoon to Dimond in August. I also gave Ruoff the name of a Fred Meyer Dimond Store employee, Dave Davis, who told me that Stewart had made racist remarks in his presence at the Dimond store. Earlier, I had made it clear to Ruoff that he should talk to Tony Bonini and Fred Becker for information about Stewart's workplace conduct.

5) About a month after my second complaint, Ruoff flew to Alaska and met with me on November 30, 2004. For the third time, I told him I believed Stewart had not been punished because of the relationship between him and the store manager, in violation of company policy; I again told him that Stewart still continued to make racial slurs, both before and after his transfer, and I complained about adverse treatment of minority employees. I also informed Ruoff that Dave Davis, a Dimond Store employee, witnessed Stewart making racial slurs in his presence. Ruoff informed me that he was going to do an investigation, and if Stewart was found to be making racial slurs, <u>he would be terminated immediately</u>.

6) I was trained by Fred Meyer to become an LPS, and company policy provided that all five elements for an arrest had to be in one person, and required that only the person with the elements could make the stop of the customer. Further, any stop of a customer, no matter how short, is considered a stop or arrest. The five-element rule, that requires all five elements to exist in one LPS, and that arrest

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

elements cannot be shared, existed throughout my entire time working at Fred Meyer. Ex. 60 describes the policy as I knew and understood it.

7) In Fred Meyer Loss Prevention training, we learn that when we are working with another employee at a stop, there is no senior officer; each loss prevention person is responsible for his or her own actions and decisions based on required training, Phases 1, 2, and signed policies; all LPS employees were charged with the same training and understanding. Only floor trainers and loss prevention managers can direct an LPS to violate a policy to make a stop on their behalf. Otherwise, there would be a violation of the rule requiring the individual with the five elements to make the stop; the other individual cannot react to the elements witnessed by someone else.

8) Paul Kodiak testified at his deposition that he was familiar with the requirements of the Loss Prevention Policy Manual, Section 400, regarding having one hour to report a non-arrest apprehension. Kodiak also signed loss prevention policies. I personally reviewed his personnel file and related documents produced by Fred Meyer in this lawsuit; review indicates Kodiak had the same training and signed off on the same policies that I did.

9) Ryan Krieger, Tony Bonini and Paul Kodiak all testified to the rule regarding the five elements and stops, the same as my interpretation noted above.

10) Kodiak made the stop that led to my termination. I have had the opportunity to review the tape of the incident, edited by Fred Meyer from CCTV video and different cameras, produced in discovery by Fred Meyer. A videotape review of the non-arrest apprehension supports the order of arrival: Kodiak first, stop made by Kodiak, my arrival. Clearly, Kodiak initiated contact with the ladies outside the entrance. Kodiak made the approach, stopped Ems and her friend, and invited them back into the store; then I arrived on the scene. The video shows both of us speaking

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

Affidavit of James Breland
Case No. A05-169 CI (TMB)
Page 3 of 8

to the young ladies, not just me. The video does <u>not</u> show me bumping into the customer, Ms. Ems.

11) I had the opportunity to review almost 400 documents Fred Meyer produced in response to my Requests for Production for all non-arrest apprehensions in Alaska from the year 2000 to 2006. All of these non-arrests have two common features: first, the Loss Prevention Specialist enacting/effecting the apprehension is the one who made the phone call within the hour to report the incident in all cases; second, all stops were made by the LPS who had the elements required for the stop.

12) I had occasion to review Bryan Stewart's entire personnel file, produced pursuant to my Requests in this lawsuit. Based on this review, I can state that there was no evidence of any notation, warning, discipline, investigation, or any mention of my complaint or Stewart's racist conduct at any time up until November of 2004; and then not again until when he finally was terminated in March of 2006.

13) I also had the opportunity to review the discovery from Fred Meyer that supposedly consisted of the entire record of the Fred Meyer investigations (alleged) of my complaint. There were no interview notes provided from anyone, just the notes of the November 13, 2004, meeting between Krieger, Johnson and I.

14) Fred Meyer had 60 days to secure and review the tape of the first incident report that I filed regarding events of February 14, 2005; but no one bothered to go back an hour and a half on the tape to verify the customer incident I wrote up; no one bothered to retain the tape. The usual Fred Meyer procedure was to retain any tapes where there was an ongoing issue, either customer or employee, for 60 days. Then if there was a dispute, the tape still would be available.

15) I believe Mr. Ruoff treated Caucasian employees better than me, and also that he retaliated because I filed the second complaint about Stewart with his supervisor so he was forced to admit he had dropped the ball on the first investigation. I have reviewed the incident reports provided by Fred Meyer in discovery with regard

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

to a Fred Meyer employee named Jimmie Brown. It appears from the record that Brown had incidents that should have resulted in findings of non-arrest apprehension, but due to Ruoff's leniency, they did not. For example, on April 22, 2005, an incident report Jimmie Brown filed was characterized as a "C-Attempted Arrest," but was in fact a non-arrest apprehension. The narrative of the incident clearly sets out a non-arrest apprehension because Brown made a definite customer apprehension or stop when he detained the customer by showing her his ID and verbally identifying himself, and then carrying on a dialogue with her. Pursuant to Fred Meyer policies, a non-arrest apprehension is "the detention of a customer, <u>no matter how slight in duration</u>," where there is no recovery of property and the stop does not result in an arrest or admission of theft. Therefore, this was a non-arrest apprehension, not an "attempted arrest." Brown's stop was not "slight in duration," since he detained the customer and had a fairly detailed conversation with her (the stop), including her showing him her purse twice, and discussing whether she had merchandise up her sleeve (attempt to recover property). In the end, Brown found no merchandise, which made this a non-arrest apprehension because the stop did not result in an arrest.

16) Additional incident reports and documents from Brown's and the incident report files include numerous additional incidents in which it appears Ruoff was lenient to Brown: (a) on 3/30/04, Brown reported non-arrest apprehension facts to Ruoff in an email, but Ruoff required no incident report paperwork; (b) on 11/24/04, Brown reported non-arrest apprehension facts, but Ruoff allowed Brown to write up his own RLPM Non-Arrest Apprehension Review Form, in which he reported no prior discipline based on his memory and without review of his file; as noted, that same incident was not specified as a non-arrest apprehension with a warning, in order to protect Brown's record; (c) 4/22/05 – Brown was warned for failure to follow non-arrest policy again. This would appear to be three non-arrest apprehensions in less than two years, had Ruoff required an accurate description of events, and as well, there

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

was also a "bathroom stop" in violation of policy, for which there were no consequences to Brown.

17) Included with Defendant's motion was an affidavit by Kevin Ruoff, Regional Loss Prevention Manager. I specifically deny Kevin Ruoff's contention that I told Kodiak I had all five elements of the arrest and then ordered him to make the stop. This is contrary to procedure, and I deny I ever told Kodiak to make the stop. My arrest record at Fred Meyer was always extremely productive and "by the book." I knew the five-element rule well and would never order another LPS to make my arrest for me because it was a violation of policy. I never ordered Kodiak or any other LPS to make any stop. Even if I had, there should have been consequences to Kodiak for making the stop based on someone else's elements.

18) Mr. Ruoff leaves an important matter out of his affidavit regarding my termination, and that is at the time of my termination, he gave the excuse that I was responsible for Kodiak's stop because Kodiak was in training and I was the trainer. Since that time, Ruoff has learned that neither Krieger, Kodiak, nor I had been informed Kodiak was in training, so apparently he has changed his reasons as to why I should be held responsible for Kodiak's stop.

19) Speaking to Fred Meyer's contention that Kodiak and I should be distinguished to make me responsible for Kodiak's stop, Fred Meyer sets out the following "reasons" why Kodiak's stop somehow becomes mine, none of which explain why I was held responsible for his non-arrest apprehension (Defendant's Br. at 21):

(a) Fred Meyer states I was the senior officer of the pair. As noted above, each officer is responsible for his or her own actions. Neither is considered "senior." There is no Fred Meyer policy that provides for a "senior" officer, but there is clear policy that requires the officer with the elements to make the stop.

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

Affidavit of James Breland
Case No. A05-169 CI (TMB)
Page 6 of 8

(b) Fred Meyer states I was the one of the two who observed the elements. Per policy, it is clear that under the circumstances only I could make a stop, if there were to be one. Policy clearly states that elements cannot be witnessed by one and then reacted to by another. (Ex. 60.)

(c) Fred Meyer states I took the lead in talking to the suspects. Per policy, it is the person who makes the stop who is responsible. It does not matter who talks to them later. I was trying to defuse the problem with known combative customers from earlier in the day.

(d) Fred Meyer states I escorted the women to the office. This does not make me responsible for the stop. When we headed to the office, our order reversed and I was in front with Kodiak in back. We are trained to have one officer in front and one in back. When the actual stop took place, Kodiak was in front and then I got there.

(e) Fred Meyer states I searched the purse. I did so for safety reasons, per policy. This does not make me responsible for the stop.

(f) Fred Meyer states I was the one who filed an incorrect report. This is false – I filed a report on the earlier encounter with the same women.

(g) Fred Meyer states the video corroborated Kodiak's statements and contradicted mine. As noted, I disagree. All the video established is that Kodiak approached and stopped the women and I came on the scene.

20) I believe the individuals mentioned in paragraph 22 of Ruoff's affidavit, whom Ruoff claims to have terminated due to not making a report within 24 hours, were employed at Fred Meyer in Washington and Oregon. They would have had different stores and different supervisors, at the least. We have not been provided discovery that would allow us to compare those employees with my situation.

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

Affidavit of James Breland
Case No. A05-169 CI (TMB)
Page 7 of 8

DATED at Anchorage, Alaska this 25th day of September, 2006.

James Breland

SUBSCRIBED AND SWORN TO before me this 25th day of September, 2006.

Notary Public in and for Alaska
My Commission expires: 1/8/09

Certificate of Service

I hereby certify that on the 25th day of September, 2006, a copy of the foregoing Affidavit of James Breland was served electronically on James R. Dickens and Peter E. Gruenstein.

s/Lee Holen
Lee Holen Law Office

Lee Holen Law Office
608 West Fourth Avenue, Suite 21
Anchorage, Alaska 99501
Tel. (907) 278-0298 - Fax (907) 278-0247
E-Mail: leeholen@gci.net

Affidavit of James Breland
Case No. A05-169 CI (TMB)
Page 8 of 8