James R. Dickens
MILLER NASH LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
Telephone: (206) 622-8484
Fax: (206) 622-7485
jim.dickens@millernash.com

Peter Gruenstein
GRUENSTEIN & HICKEY
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK 99501
Telephone: (907) 258-4338
Fax: (907) 258-4350
ghlaw3@gci.net

Attorneys for Defendant

Hon. Timothy M. Burgess

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

JAMES BRELAND,

              Plaintiff,

     v.

FRED MEYER STORES, INC.,

              Defendant.

Case No. A05-169 CI (TMB)

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff James Breland ("Breland") has filed his response to defendant's motion for summary judgment. For the reasons previously set forth and additionally described herein, plaintiff has failed to raise genuine issues of material fact sufficient to preclude summary judgment. The motion of defendant Fred Meyer Stores, Inc. ("Fred Meyer") should be granted as to all claims.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 1 of 19

SEADOCS:249406.1

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

## II.  EVIDENCE RELIED UPON

A detailed statement of undisputed facts and plaintiff's testimony is set forth in Fred Meyer's Motion for Summary Judgment.  Fred Meyer also relies on the additional documentary evidence attached to the October 6, 2006 declaration of James R. Dickens (hereinafter referred to as "Dickens Decl., Ex. ___, p. ___").

## III.  LEGAL ANALYSIS

1.    Fred Meyer is Entitled to an Affirmative Defense on Breland's Hostile Environment Claim.

The legal standard for an affirmative defense to a hostile environment claim based on conduct by a plaintiff's supervisor is as follows:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c).  The defense comprises two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . .  And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  Fred Meyer has proved each element.

a.    Fred Meyer had a clear policy that applied to Breland's alleged circumstances.

Fred Meyer's policy prohibiting racial harassment includes the following steps:

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:249406.1

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

If you believe that you are being sexually harassed by a co-worker, supervisor, Customer, or vendor, or if you believe you are being harassed by a co-worker, supervisor, Customer, or vendor because of your race, color, religion, gender, national origin, age, disability, or sexual orientation, you should take these steps:

- Firmly and clearly tell the person who is harassing you that his or her behavior is unwelcome and should stop at once. If possible, take a witness to this discussion.

- Write a statement about the incident and what you did to stop it, including dates, times, and places. This statement will be helpful if the harassment continues and the company needs to investigate.

**Note:** If you are uncomfortable telling the person who is harassing you to stop, then proceed to the following reporting procedure:

Report the incident to your immediate supervisor, another member of management, or the Employee Relations Department. Your report should be as specific as possible and include the following:

- The name of the person who is harassing you

- A description of the conduct

- The effect that conduct is having on your working conditions and work performance

- The names of any witnesses who could assist in the investigation

Breland Dep., Exs. 2, 3, and 4. Breland was well aware of this policy and understood the actions required of him in the event he was harassed by a supervisor on the basis of his race. Breland Dep., p. 129. This evidence clearly shows Fred Meyer fulfilled its duty to take preventative measures as a matter of law by adopting and promoting awareness of its anti-harassment policy. Hardage v. CBS Broad. Inc., 427 F.3d 117 (9th Cir. 2005), amended by No. 03-35906, 2006 U.S. App. LEXIS 3017 (Feb. 8, 2006).

SEADOCS:249406.1

b.   Breland unreasonably failed to take advantage of corrective opportunities.

Fred Meyer's policy does not require that a harassment victim address the issue directly with a harasser. The policy merely offers such a step as a possible starting point and specifically suggests that a witness be present for such a discussion and that a written record be made. Nevertheless, Breland claims that he spoke to Stewart about alleged inappropriate remarks on at least four separate occasions without a witness, without documenting, and without satisfactory resolution. Breland Dep., pp. 49-50, 52-53, 67-69, 119-121, 124. A first conversation with a supervisor about such inflammatory remarks, without documentation and without a witness, might have been reasonable if otherwise there was a good relationship between Breland and Stewart. But for Breland to now contend that he repeated the exercise at least three more times without bringing the matter to the attention of another member of management cannot be characterized as required by the policy or even compliant with the policy.

> When . . . the only possible source of notice to the employer . . . is the employee who is being harassed, she cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed.

Zimmerman v. Cook County Sheriff's Dep't., 96 F.3d 1017, 1019 (7th Cir. 1996), cited in Hardage, 2006 U.S. App. LEXIS 3017, at *23 (quoting Zimmerman v. Cook County Sheriff's Dep't., 96 F.3d 1017, 1019 (7th Cir. 1996)). As a result, Fred Meyer is not vicariously liable to Breland for remarks made by Stewart before Breland complained to Ruoff on March 22, 2004.

c.   Fred Meyer took prompt corrective action in response to Breland's initial complaint.

Once Breland complained to Ruoff, the following uncontroverted events occurred: Breland first complained to Ruoff in an e-mail dated March 22, 2004, at 9:10 p.m.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 4 of 19

Ruoff responded by e-mail to Breland before 8:00 a.m. the next morning, March 23, 2004. Ruoff thanked Breland for his comments and expressed his commitment to improve the work environment. Breland Dep., Ex. 21. Ruoff also contacted the Store Director in Muldoon, Mike Johnson ("Johnson"), and the Regional Human Resources Supervisor, Jennifer Carlson, to discuss an appropriate response. Breland Dep., Ex. 22. As the senior on-site manager, Johnson conducted an investigation, including personal interviews with both Breland and Stewart. Johnson confronted Stewart with the specific allegations made by Breland. Johnson reported his findings to Ruoff. Ruoff Decl., p. 4. Following his discussion with Johnson, Stewart called Breland and personally apologized for making any offensive remarks. Breland Dep., p. 198.

The conclusion of Breland's March initial complaint specifically identified education as the appropriate response to Stewart's conduct:

> Again I'll say I think LPM Stewart is a decent person and we do generally get along pretty good but I think a little education on these topics will go a long way and hopefully he'll apply what he's learned and have a better understanding of diversity, equal rights, tolerance, discrimination, etc. . . . Kevin I think educating LPM Stewart is the key.

Breland Dep., Ex. 21; <u>see also</u> Breland Dep. pp. 187-188, 217, and Ex. 20. Within weeks of Breland's complaint, Stewart was given a performance appraisal dated April 12, 2004, and signed by Stewart on May 26, 2004. Dickens Decl., Ex. 1. The review contains a developmental plan specifically noting that Stewart must complete a diversity training course the next time it was offered in Alaska. Dickens Decl, Ex. 1 and 2. Considering the "overall picture," Fred Meyer has proved as a matter of law that prompt corrective action was undertaken in response to Breland's initial complaint. <u>Hardage</u>, 2006 U.S. App. LEXIS 3017.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 5 of 19

SEADOCS:249406.1

d.    Fred Meyer took prompt corrective action in response to
Breland's second complaint.

On October 30, 2004, Breland sent a second e-mail to Ruoff indicating Breland's dissatisfaction with the resolution of his initial complaint seven months earlier. Breland Dep., Ex. 25.    When Breland complained this second time, the following uncontroverted events occurred: Ruoff immediately arranged a follow-up investigation. Ruoff Decl., p. 5.  Johnson and Stewart's replacement at the Muldoon store, Ryan Krieger, met with Breland on November 13, 2004.  Breland Dep., Exs. 26, 27, and 28.  Johnson and Krieger reported their findings to Ruoff.  Breland Dep., Exs. 27 and 28.  In November 2004, Ruoff flew to Alaska and met with Breland.  Breland Dep., pp. 204-205.  Ruoff also spoke to other loss prevention employees about Stewart, but none of them told Ruoff that Stewart had made any racial remarks since Breland's prior complaint.  Ruoff Decl., p. 5.  In an effort to ensure the matter was finally resolved, Ruoff worked with Jennifer Carlson in Human Resources and prepared a formal written warning letter to Stewart.  Ruoff Decl., p. 5.  The final warning letter was presented to Stewart on December 2, 2004, by Mike Blewett, the Store Manager of the Fred Meyer Dimond location.  Ruoff Decl., p. 5; Ex. 7.  These facts show that prompt corrective action was taken in response to Breland's second complaint.

e.    Fred Meyer's responses to Breland's complaints about
Stewart were effective.

Between his second complaint in October 2004, and Breland's termination in February 2005, Breland does not allege any further racial remarks or other harassing conduct by Stewart.  In other words, the only period during Breland's employment where he disputes the effectiveness of Fred Meyer's response to his allegations about Stewart is the period between Breland's initial complaint on March 22, 2004, and his follow-up complaint on October 30, 2004.

Breland's October 30, 2004, complaint contains the following *new* allegations about Stewart:

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:249406.1

> Also between the time of the complaint and Mr. Stewart transfer I observed several other injustices, during the remodel Mr. Stewart would silicate [sic] the help of the RTS but on every occasion would only ask the same two males which happen to be minorities (Hispanic and Samoan) to paint, move, and clean the LP office among other things. It's very disturbing as this could be viewed as institutional discrimination as he never once ask a non-minority to do these task [sic]. Also both these individuals showed interested in the open unbudgeted position that was never posted Mr. Stewart never once offered or asked the minority workers to apply for the position but told a non-minority RTS to apply which the [sic] individual was offered and accepted the job.

Breland Dep., Ex. 25. The October 30, 2004, complaint makes no mention of any further racial remarks by Stewart to Breland, about Breland, or in Breland's presence, an extraordinary omission if any such conduct had occurred. Breland's examples of inappropriate conduct by Stewart involve Breland's subjective perception of bias in the delegation of work assignments and promotional opportunities given to other employees. While these are important issues in the workplace, they are not evidence that Fred Meyer's response to Breland's initial complaint regarding racial remarks by Stewart was ineffective. Furthermore, Breland's subjective perception is directly contradicted by Stewart's deposition testimony where Stewart explains that he encouraged both the Hispanic and the Samoan employees to apply for the open LPS position. Dickens Decl., Ex. 2.

In his deposition, Breland testified that he reported to Ruoff in November 2004 that he had heard hearsay rumors of inappropriate comments by Stewart at the Dimond store ("The loss prevention personnel over there spoke with me and stated that Mr. Stewart was still making racist comments."). Breland Dep., p. 206. On December 17, 2004, Breland contacted the Alaska State Commission for Human Rights ("ASCHR"). The summary of the conversation with Breland contained in the Commission's records include the following:

> IR lodged complaint in May 04. He said that the employer did not do anything. Loss prevention manager transferred to

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:249406.1

Dimond store in August and was no longer directly supervising IR. IR heard from coworkers that the comments continued after transfer, and IR lodged a follow up complaint in October. Employer investigated the complaint, also investigated why store director did not properly handle Irs complaint in May. Ir said loss prevention manager received a "first and Final" warning in early november. IR did not know if anything was done to the store director. IR had heard that the comments still continue. He has not heard them directly but coworkers at Dimond have told him that the Loss Prevention manager still makes racial comments. Comments are not specifically directed at IR.

I explained to IR that it did not appear he had experienced a direct harm since Loss prevention manager transferred to Dimond in August. Conduct is not occurring in Irs workplace and could not take complaint on hearsay.

Dickens Decl., Ex. 3  The "Inquiry Solution" in the ASCHR's record of Breland's December 17, 2004, call is "Lack of jurisdiction, no harm." Dickens Decl., Ex. 3.

Fred Meyer investigated Breland's second complaint and corrected the initial oversight by issuing a last and final warning letter to Stewart. Ruoff Decl., Ex. 7. However, Fred Meyer did not find, nor has Breland now shown, that he was a victim of a hostile work environment during the time between his initial complaint on March 22, 2004, and his second complaint on October 30, 2004. Ruoff Decl., Ex. 5.

Summary judgment in favor of Fred Meyer on Breland's claim of hostile environment under Title VII should be granted. Breland failed to make a complaint to anyone identified in the applicable policy other than the alleged harasser for an unreasonable period of time. However, once he did so, Fred Meyer exercised reasonable care to prevent and correct the inappropriate conduct brought to its attention.

2.    Breland Has Insufficient Evidence of Pretext and Retaliatory Motivation to Support the Claims Relating to His Termination.

Breland's complaint alleges three causes of action relating to his termination—retaliation in violation of Title VII, disparate treatment in violation of

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 8 of 19

SEADOCS:249406.1

42 U.S.C. § 1981, and wrongful termination in violation of public policy. Breland makes

essentially the same factual contentions seeking to create genuine issues of material fact with

regard to each claim. Breland's factual contentions regarding his termination are discussed

below, and then each of his claims is discussed in turn.

a.     <u>Ruoff was "forced to admit" that he "dropped the ball" on
Breland's initial complaint – not true.</u>

All that the evidence shows is that Ruoff acknowledged to Breland that

Stewart should have been issued a disciplinary letter at the conclusion of the investigation of

Breland's initial complaint. Breland testified in his deposition that "he basically stated that

we failed to document—I dropped the ball and we failed to document the incident." Breland

Dep., p. 250. Ruoff's statement is not evidence that there was "no investigation," but only a

delay in documenting it. Furthermore, the characterization of the statement in Breland's

brief as a begrudging and humiliating "forced admission" is argument, not evidence.

Breland's Brief, p. 31.

b.     <u>Breland sent his second complaint to Ruoff's supervisor.</u>

It is uncontroverted that Ruoff suffered no adverse consequences as a result of

Breland's actions. Ruoff Decl., p. 5. In fact, Breland's only use of this evidence is purely

speculative: "[C]ertainly, he must have been embarrassed that he failed to investigate a

serious complaint of race discrimination/hostile environment, and was forced to admit he had

dropped the ball on it for over seven months." Breland's Brief at 31. Again, this is

argument, not evidence.

c.     <u>Ruoff "watered down" the final warning letter presented to
Stewart – not true.</u>

Breland suggests that comparing the draft letter (Breland's Response, Ex. 68)

to the final version (Breland's Response, Ex. 57) "shows Ruoff's motive to protect Stewart

and avoid Breland's complaints." Breland's Brief, p. 11. However, the paragraph imposing

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:249406.1

the <u>disciplinary consequences</u> is word-for-word the same in both versions.  The fact that the final version was more circumspect in its characterization of disputed background facts had no bearing whatsoever on the discipline imposed.  Plaintiff's characterization of the revisions is utterly unsupported.  In fact, it is more reasonable to infer that imposing the same discipline with recitation of fewer underlying facts is a more aggressive management response.

d.    <u>Ruoff terminated Breland for a stop made by Kodiak – not true</u>.

Breland was terminated for failing to timely report a non-arrest apprehension in violation of clear company policy.  It is undisputed that an unreported non-arrest stop occurred and that such failure to report was a terminal offense.  It is also undisputed that Paul Kodiak made the initial contact with the customers involved in the incident.  Plaintiff characterizes the initial contact by Kodiak as conclusive proof that he was responsible for the stop and for making the required report.  Breland brushes aside the undisputed facts that distinguish the roles of Breland and Kodiak in the matter:

- Breland was the senior officer of the pair;
- Kodiak was working his very first shift since returning from military service;
- Breland was the only one who observed the elements of shoplifting;
- Kodiak observed no elements of shoplifting and reported to management that he detained the two customers only upon Breland's instructions;
- Breland was the one who took the lead in talking to the suspects;
- Kodiak's only role was the initial customer contact;
- Breland was the one of the two who escorted the women to the office;
- Kodiak followed behind;
- Breland searched the suspect's purse; and

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 10 of 19

SEADOCS:249406.1

- Kodiak performed no search at all.

Ruoff Decl., pp. 6-8.  The day after the incident, Ruoff spoke to one of the customers involved, and she also identified Breland as the LPS who "did the talking."  Ruoff Decl., p. 6, Ex. 8.  As a result, Fred Meyer properly held Breland responsible for the non-arrest stop and the failure to report it.  Ruoff Decl., pp. 7-8.

> e.  <u>Ruoff gave a "false" reason for holding Breland responsible for reporting the non-arrest stop – not true.</u>

Plaintiff insinuates that Kodiak was not in fact in training.  Breland's Brief, pp. 14, 31, and 33.  However, the February 14, 2005, incident occurred on Kodiak's first day back on the job after an extended military leave.  Ruoff Decl., p. 7; Dickens Decl., p. 2.  Thus, although he had received full training before, it was company practice for Kodiak to be retrained prior to assuming his full duties.  Dickens Decl., p. 2.  Once it was determined that Kodiak's trainee status was unknown to the employees involved in the incident, it was dropped as a reason for holding Breland accountable.  Ruoff Decl., pp. 6-8; Dickens Decl., p. 2.  Nevertheless, there were ample other reasons for the decision to remain unchanged.

> f.  <u>Kodiak was not disciplined for his role in the non-arrest apprehension.</u>

Ruoff concluded that Breland, not Kodiak, was responsible for the non-arrest stop and for making the report.  Ruoff Decl., p. 7.  Breland was the senior officer, he observed the elements, he directed the stop, and he stated that he would submit the report.

> g.  <u>Ruoff did not make Breland's prior disciplinary record look worse than it was when completing paperwork on the termination.</u>

Breland was terminated for a single violation of a cardinal rule—failing to report a non-arrest stop within one hour.  Ruoff Decl., pp. 3 and 7, Ex. 2.  Failure to report a non-arrest stop results in termination irrespective of an employee's prior disciplinary history.  Ruoff Decl., p. 3.  Since Breland's prior disciplinary record had no impact on his

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)

SEADOCS:249406.1

termination, there was nothing to be gained by amplifying it. Furthermore, the documentation underlying both of the incidents noted on Exhibit 31 was contained in Fred Meyer's personnel records. Breland Dep., Exs. 9-12, and 17-18.

> h.   Preservation of surveillance videotape allegedly showing an earlier altercation.

It is undisputed that a non-arrest stop occurred and that the failure to report it was a terminal offense. Ruoff Decl., p. 3. It is also undisputed that failure to report the non-arrest stop was the reason for Breland's termination. Breland Dep., p. 237. It is undisputed that the stop was recorded on video, and the tape was retained. Breland Dep., p. 235. Breland's allegation of an earlier altercation is not germane to the question of whose responsibility it was to make the required report of the non-arrest stop, and there is no evidence of either such an incident, or that any incident occurring in the parking lot would have been videotaped.

> i.   If Breland had been terminated for having two non-arrest apprehensions in a 24-month period, he would have been disciplined more harshly than Jimmie Brown, a Caucasian Fred Meyer employee.

Breland was terminated for an offense which Fred Meyer considered very serious—failure to report a non-arrest apprehension within one hour. The applicable policy is also clear that Breland would have been subject to termination for the second non-apprehension arrest. Breland Dep., p. 240, Ex. 19. However, this issue was not reached as a result of Breland's failure to report, and speculative comparisons are not probative of any issue in the case. Ruoff Decl., p. 8. What is probative is that Breland was treated exactly the same as every other employee Ruoff held accountable for failing to report a non-arrest apprehension. Ruoff Decl., p. 8. Furthermore, the fact that a second non-arrest apprehension would have subjected Breland to possible termination gives Breland a clear reason to have avoided taking responsibility for the February 15, 2005, non-arrest apprehension.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 12 of 19

SEADOCS:249406.1

Among Breland's factual contentions above, the only one that has a meaningful bearing on the issues of pretext and retaliatory motivation is whether or not Ruoff made a reasonable business decision in determining Breland was responsible to report the February 14, 2005 non-arrest apprehension. For reasons discussed below, Breland's quarrel with Ruoff's business judgment is not sufficient to overcome summary judgment. The remainder of Breland's factual contentions above either do not support the inferences proposed or do not relate to issues material to deciding the case.

3.    Breland's Title VII Retaliation Claim Should Be Dismissed.

       a.    The temporal proximity between Breland's final complaint and his termination does not provide a causal link between Breland's complaints and his termination.

The McDonnell Douglas burden-shifting analysis applies to Breland's retaliation claim. Derendinger v. Kiewit Constr. Co., 272 F. Supp. 2d 850, 854 (D. Alaska 2003). Breland cannot establish a prima facie case because he cannot establish a causal link between his protected activity and the termination of his employment. Id.

The Supreme Court has noted that the "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). Breland does not cite a single case holding that a four month gap supports an inference of causation. In fact, the case law supports the opposite conclusion—a four month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation. See Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998) (five months too long); Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four months too

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 13 of 19

SEADOCS:249406.1

long).   As a result, Breland must provide "circumstantial evidence of a 'pattern of antagonism'" following the protected conduct to create a question of fact as to causation. Porter v. Cal. Dep't. of Corrs., 383 F.3d 1018, 1030 (9th Cir. 2004) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)).   Breland does not offer any evidence of retaliatory animus between the time of his complaints and his termination.  Thus, he cannot establish a "pattern of antagonism" to overcome the gap in temporal proximity. Id.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

        b.        <u>Breland's circumstantial evidence of retaliatory motivation and pretext is insufficient</u>.

Even if Breland could establish a causal link sufficient to make a *prima facie* case of retaliation, Breland's evidence of pretext does not undermine Fred Meyer's legitimate, nondiscriminatory reason for Breland's termination.  Plaintiff is correct in that circumstantial evidence of retaliatory motivation and pretext may be sufficient.  Breland's Brief, pp. 32-37.  However, the factual contentions offered by plaintiff as circumstantial evidence of retaliatory motive and pretext do not support any such inference.  The essence of plaintiff's evidence is that Ruoff found Breland, rather than Kodiak, responsible for reporting the non-arrest stop.  In other words, the plaintiff disputes the application of his supervisor's business judgment.

Quarreling with a supervisor's business judgment is not sufficient evidence of pretext in a Title VII case:

> A plaintiff is not allowed to recast an employer's nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by quarreling with the wisdom of that reason.

Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000).  Ruoff was faced with the business decision of whom to hold responsible for failing to report the February 14, 2005,

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 14 of 19

SEADOCS:249406.1

non-arrest apprehension.  Given the facts known to Ruoff, his business decision to hold Breland accountable was clearly one of a reasonable employer.

The rational exercise of Ruoff's business judgment in holding Breland responsible for reporting the non-arrest stop is underscored by the implausibility of Breland's account of events.  To believe Breland, Ruoff would have to accept the following as true:

- Kodiak apprehended customers without observing *any* elements of shoplifting, despite Breland's admonition that an element was missing, and without any request by Breland that he do so;

- Breland immediately instructed the stopped customers that they were free to go, but they nevertheless voluntarily followed Breland and Kodiak all the way back into the loss prevention office in the store;

- One of the customers insisted that Breland search her purse, and he only did so to comply with her request;

- Kodiak lied in his written statement about receiving direction from Breland to make contact with the customers and about Breland's statement that he would make the required report; and

- When the customer spoke to Ruoff to complain about the stop, she fabricated her statement that Breland had taken the lead in the incident.

The remainder of plaintiff's circumstantial evidence proffered in support of retaliatory motivation and pretext does not undermine the credibility of Fred Meyer's legitimate, non-discriminatory reason for terminating Breland.  For example, revising the background facts recited in a draft warning letter while leaving the actual discipline the same is not evidence "protecting Stewart," "avoiding Breland's complaints," or any other discriminatory intent.  The fact that Breland sent his second complaint to Ruoff's boss, when it is uncontroverted that Ruoff suffered no adverse consequences, cannot be offered as proof that he "must have been embarrassed."  This is pure speculation.  The circumstantial

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 15 of 19

evidence presented by Breland must be probative without resorting to strained conjecture. It is not.

    4.    <u>Plaintiff's Disparate Treatment Claim Under Section 1981 Should be Dismissed</u>.

Fred Meyer concedes, for purposes of this motion, that Breland has established a prima facie case. Fred Meyer has articulated a legitimate, non-discriminatory reason for Breland's termination—his failure to timely report a non-arrest apprehension. As a result, Breland must present evidence of pretext sufficient to defeat summary judgment. Breland may establish pretext through evidence showing Fred Meyer's explanation is "unworthy of belief or through evidence showing that discrimination more likely motivated its decision." <u>Pottenger v. Potlatch Corporation</u>, 329 F.3d 740, 746 (9th Cir. 2003).

Breland's evidence of pretext for disparate treatment is the same as his evidence of pretext in support of his retaliation claim. As shown above, Breland's factual allegations do not undermine Ruoff's legitimate, non-discriminatory reason for Breland's discharge. Breland must show that a rational trier of fact could find that his termination for failing to report a non-arrest apprehension was pretextual. <u>Id.</u> He has failed to do so.

Although his complaint does not assert a claim of retaliation under 42 U.S.C. § 1981, plaintiff now raises the issue. Breland's Brief, p. 39. Although the elements of proof are the same with regard to retaliation claims under Title VII and Section 1981, plaintiff should not be allowed to assert claims in response to summary judgment that plaintiff failed to plead in his complaint.

    5.    <u>Plaintiff's State Law Claims for Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed</u>.

Breland claims wrongful discharge in violation of public policy. Such a claim is colorable under the Alaska covenant of good faith and fair dealing in employment contracts. <u>Eldridge v. Felec Servs., Inc.</u>, 920 F.2d 1434 (9th Cir. 1990); <u>Norcon, Inc. v.</u>

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 16 of 19

SEADOCS:249406.1

Kotowski, 971 P.2d 158, 166-67 (Alaska 1999).  Although Breland did not plead the claim in his complaint, he now also alleges a distinct and separate contract claim for breach of the covenant of good faith and fair dealing on the basis of disparate treatment.  Breland's Brief, 37-41 (citing Charles v. Interior Reg'l Hous. Auth., 55 P.3d 57, 62 (Alaska 2002)).  Plaintiff should not be allowed to raise a new contract claim in his response to a motion for summary judgment.  Furthermore, Breland's state law claims are based upon the identical facts proffered in support of his retaliation claim and is disparate treatment claim.  Breland's Brief, p. 38.  However, as discussed above, Breland's factual allegations do not undermine Ruoff's legitimate, non-discriminatory reason for Breland's discharge.  As a result, Breland has not raised a genuine issue of material fact with regard to retaliation protected by public policy under Eldridge or with regard to disparate treatment under Charles.

## IV.  CONCLUSION

Breland's contention that Kodiak was primarily responsible for the non-arrest apprehension does not defeat summary judgment.  Fred Meyer's investigation involved discussion with an aggrieved customer, videotape review, interviews of Breland and Kodiak, and input from multiple management functions and levels.  Breland's mere disagreement with the decision-maker's conclusion cannot overcome his burden to show Fred Meyer's reason for terminating Breland is unworthy of belief or motivated by discrimination or retaliation.

An unreported non-arrest apprehension occurred, and Ruoff concluded after a thorough investigation that it was Breland's report to make.  Breland and his peers were given prior written notice of the exact disciplinary consequence of failure to report a non-arrest stop. The decision-maker in this case has acted consistently with regard to every other employee who engaged in the same conduct as Breland.

Breland simply cannot demonstrate that the legitimate, non-discriminatory reason offered by Fred Meyer's decision-makers is untrue, unworthy of belief, or a mere

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 17 of 19

SEADOCS:249406.1

pretext for discrimination or retaliation.  Summary judgment is appropriate.  Additionally,

Fred Meyer has established with uncontroverted facts and the plaintiff's own testimony that

the company is entitled to an affirmative defense to plaintiff's hostile environment claim.

Based on the foregoing, the defendant respectfully asks that its motion be

granted and all plaintiff's claims dismissed with prejudice.

DATED this 6th day of October, 2006.

MILLER NASH LLP

s/ James R. Dickens
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA  98101-2352
Phone:  (206) 622-8484
Fax:  (206) 622-7485
E-mail:  jim.dickens@millernash.com
Admitted *pro hac vice*

GRUENSTEIN & HICKEY

s/ Peter Gruenstein
Gruenstein & Hickey
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK  99501
Phone:  (907) 258-4338
Fax:  (907) 258-4350
E-mail:  ghlaw@gci.net
ABA No. 7910079

Attorneys for Defendant

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

SEADOCS:249406.1

Certificate of Service

I hereby certify that on October 6, 2006,
a copy of the foregoing document was served
electronically on:

Lee Holen

*s/ James R. Dickens*

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Breland v. Fred Meyer Stores, Inc.
Case No. A05-169 CI (TMB)
Page 19 of 19

SEADOCS:249406.1